831 A.2d 495

Brenda CANDELERO et al.

v.

Christopher COLE et al.

No. 2052, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Sept. 3, 2003.

Michael May, Baltimore, for appellants.

Donald E. Hoffman, Asst. Atty. Gen. (Laura C. McWeeney, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellees.

Argued before KENNEY, EYLER, DEBORAH S., and GREENE, JJ.

KENNEY, J.

Brenda Candeloro appeals from two orders of the Circuit Court for Baltimore County, dismissing several counts contained in her complaint and granting summary judgment on the remaining counts in favor of Christopher Cole, the Maryland State Police, and the State of Maryland ("appellees"). On appeal, Candeloro asks two questions, which we have reworded:

    I.   Did the circuit court err by dismissing several counts of Candeloro's complaint for failing to comply with the Maryland Tort Claims Act ("MTCA"), Md.Code (1984, 1999 Repl.Vol.), § 12–101 *et seq.* of the State Government Article ("SG")?

    II.   Did the circuit court err by granting summary judgment on the malicious prosecution count?

We answer "no" to both questions and affirm the judgments of the circuit court.

## PROCEDURAL AND FACTUAL BACKGROUND

On December 7, 1997, at the intersection of Route 30 and Dover Road in Baltimore County, an altercation occurred between Candeloro and Christopher Cole, a trooper with the Maryland State Police. As a result, Candeloro was arrested and charged with second degree assault, resisting arrest, disorderly conduct, wearing and carrying mace, and disobeying the lawful order of a police officer. At a court trial on May 7, 1998, the State *nolle prossed* all of the charges except disobeying the lawful order of a police officer, for which Candeloro was convicted.

Because of injuries allegedly sustained during that altercation and because Trooper Cole was an employee of the State of Maryland, Candeloro submitted a written claim to the State Treasurer, as required by SG § 12–106(b)(1) of the MTCA.[1]

---

1.  That section provides that a "claimant may not institute an action under this subtitle unless: the claimant submits a written claim to the

The claim was sent by certified mail on December 7, 1998, and received by the Treasurer on December 9, 1998.[2] In December 2000, Candeloro filed a nine-count complaint against appellees in the circuit court, seeking damages for assault ("count I"), battery ("count II"), false arrest ("count III"), false imprisonment ("count IV"), intentional infliction of emotional distress ("count V"), malicious prosecution ("count VI"), invasion of privacy ("count VII"), violation of due process ("count VIII"), and loss of consortium ("count IX").

Appellees filed a motion to dismiss the complaint, arguing, in part, that Candeloro could not institute the action because she had not complied with SG § 12–106(b)(1), requiring that a written claim be submitted to the Treasurer within one year "after the injury." Specifically, they contended that the claim had not been received by the Treasurer until December 9, 1998, more than one year after the injury. The circuit court agreed, dismissing counts I through IV and VII through VIII.[3]

Appellees then filed a motion for summary judgment, arguing that count V should be dismissed also because it was undisputed that Candeloro had not complied with the notice requirement of SG § 12–106(b)(1). They also contended that because Candeloro's "arrest and [the] criminal proceeding" were based upon probable cause, there was no basis for count VI, i.e., malicious prosecution. The circuit court granted the motion as to both counts of the complaint. Concerning count V, the circuit court held that "the time limits as required by Maryland law have not been complied with." As to count VI, the circuit court stated:

> I don't think you can have a malicious prosecution when, in fact, there is a conviction. And, in fact, Candeloro was prosecuted for the event that occurred on December 7, 1997.

---

Treasurer ... within 1 year after the injury to person or property that is the basis of the claim."

**2.** The record does not contain the final determination of that claim. Because Candeloro later instituted a civil action, we assume that the claim was denied.

**3.** Shortly thereafter, Candeloro voluntarily dismissed count IX.

She was charged with various offenses. She was convicted of failing to obey an order of an officer. And I don't believe you can have malicious prosecution when, in fact, a person is prosecuted for an event and is convicted for some event, some crime arising out of that event.

This timely appeal followed.

## DISCUSSION

### I.

The State of Maryland's sovereign immunity was substantially waived by the enactment of the MTCA, affording a "remedy for individuals injured by tortious conduct attributable to the State." *Condon v. State*, 332 Md. 481, 492, 632 A.2d 753 (1993). The MTCA requires that an individual submit a claim to the State Treasurer before instituting an action against the State. The Treasurer is responsible for considering, settling, or denying those claims, SG § 12–107, and "shall adopt necessary regulations: to (1) set policies and procedures for payment on losses, including adjustment and approval; ... and (3) otherwise to carry out the duties of the Treasurer under this title," Md.Code (1985, 2001 Repl.Vol.), § 9–104(b) of the State Finance and Procurement Article ("SF & P").

Under the MTCA, a claimant must comply with certain threshold requirements, one of which is the submission of a written claim to the Treasurer "within 1 year after the injury." SG § 12–106(b)(1). Regulations adopted by the Treasurer provide that a claim "shall be deemed to have been submitted as of the date it is actually *received* by the State Treasurer's office," COMAR 25.02.03.01(B) ("the Regulation") (emphasis added), and "an otherwise proper claim shall be received by the State Treasurer's Office within 1 year after the injury that is the basis for the claim," COMAR 25.02.03.03(B). The word "submit" is defined as "actual receipt by the Treasurer." COMAR 25.02.01.02(B)(5).

Since the MTCA was enacted in 1981, the amount of time in which a claimant must file a claim with the Treasurer has

changed. Initially, a claimant had to "present" a written claim to the Treasurer "within the applicable period of limitations." *Condon,* 332 Md. at 493, 632 A.2d 753. By Chapter 538 of the Acts of 1985, the legislature amended the MTCA, narrowing "the time in which claimants could file claims" from "three years to 180 days after the date of the injury." *Condon,* 332 Md. at 494, 632 A.2d 753. In 1995, the legislature again amended the MTCA, expanding the time in which claimants could file claims from 180 days to "1 year after the date of injury." SG § 12–106(b)(1).

Candeloro argues that the Regulation's requirement that a claim is "deemed submitted" when it is received by the Treasurer is "inconsistent with the legislative intent" of SG § 12–106(b)(1). According to Candeloro, the word "submit" requires only that a claimant transmit a claim, i.e., by mail, within "1 year after the injury" and not that it be "received" by the Treasurer. We are not persuaded.

When the legislature delegates authority to a state agency to promulgate regulations, "the agency's regulations are valid under the statute if they do not contradict the statutory language or purpose." *Lussier v. Maryland Racing Comm'n,* 343 Md. 681, 688, 684 A.2d 804 (1996). Although the MTCA is to be "construed broadly, to ensure that injured parties have a remedy," SG § 12–102, we do not believe that the Regulation contradicts the statutory language or purpose of SG § 12–106(b)(1). Under the MTCA, the Treasurer may review, settle, or deny a written claim. In so doing, the Treasurer shall adopt necessary regulations to "set policies and procedures for payment on losses, including adjustment and approval" and "otherwise carry out" those duties. *See* SF & P § 9–104(b). The broad authority granted by the legislature to the Treasurer would encompass a regulation providing that a claim "shall be deemed to have been submitted as of the date it is actually received...."

The Regulation also reflects the statutory purpose of SG § 12–106(b)(1), which is to "give the State early notice of claims against it." *Haupt v. State,* 340 Md. 462, 470, 667 A.2d

179 (1995). Notice provides the State with an opportunity to "investigate the claims while the facts are fresh and memories vivid, and, where appropriate, settle them at the earliest possible time." *Id.* Only the receipt of a claim ensures that the State is provided with notice. The mere mailing of a claim does not.

Moreover, the Regulation was enacted in 1990. Since then, the legislature has amended SG § 12–106 twice. On neither occasion did it alter or change the language of § 12–106(b)(1) to clarify that the word "submit" did not mean "receive." Because the legislature is "presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law," *Messitte v. Colonial Mortg. Service Co. Associates, Inc.*, 287 Md. 289, 294, 411 A.2d 1051 (1980), the implication is that the Regulation does not contradict the statutory language or purpose.

Candeloro also argues that the mailing of her claim on December 7, 1998, "amounted to substantial compliance," and, therefore, satisfied the notice requirement of SG § 12–106(b)(1). Again, we are not persuaded.

The Court of Appeals has recognized the existence of a substantial compliance argument under the MTCA. In *Condon*, 332 Md. at 496, 632 A.2d 753 (quoting *Conaway v. State*, 90 Md.App. 234, 246, 600 A.2d 1133 (1992)), the Court accepted our definition of substantial compliance as a "communication that provides the State '*requisite and timely* notice of facts and circumstances giving rise to the claim.'" (Emphasis supplied.) "The doctrine of substantial compliance, however, is not license to ignore the clear mandate of the MTCA," *Chinwuba v. Larsen*, 142 Md.App. 327, 355, 790 A.2d 83 (2002), and

cannot serve as a springboard for judicial legislation. Provisions such as this, and the canon of construction favoring a liberal interpretation of remedial legislation, are helpful in resolving ambiguities in statutes, but do not permit us to

expand the statute to afford relief where the words of the statute bar that relief.

*Simpson v. Moore,* 323 Md. 215, 227, 592 A.2d 1090 (1991). Those principles are illustrated in two cases, *Simpson, supra,* and *Conaway, supra.*

In *Simpson,* the case was dismissed because the claimant failed to file a written claim within 180 days after the accident. The claimant argued that the legislature intended the notice requirement in SG § 12–106(b)(1) to contain the same provision as that contained in Md.Code (1974, 1984 Repl.Vol.), § 5–306 of the Courts & Judicial Proceedings Article ("CJ"), permitting waiver of the notice requirement, under certain circumstances, in a case filed under the Local Government Tort Claims Act. The Court of Appeals declined to incorporate that waiver provision into SG § 12–106, stating that the legislature could have done so, if it wanted, by amendment. Thus, because there was an "outright failure" by the claimant to file a written claim, and compliance was "a condition precedent to the maintenance of a claim against the State," the doctrine of substantial compliance was not applicable. *Simpson,* 323 Md. at 228–29, 592 A.2d 1090.

In *Conaway,* a prisoner filed a timely claim with the Treasurer, but did not demand specific damages as required by SG § 12–107(a). Applying the doctrine of substantial compliance, we held that while the claim "did not literally comply with all of the requirements of [SG] § 12–107(a)," it provided the State with "sufficient written notice of the circumstances" of the accident to allow it to "investigate the claim and respond either by settlement or defense." *Conaway,* 90 Md.App. at 250, 600 A.2d 1133 (quoting *Adams v. United States,* 615 F.2d 284, 289 (5th Cir.1980)). In so holding, we distinguished *Simpson,* stating that the claimant in that case had "provided no notice to the State." *Conaway,* 90 Md.App. at 241, 600 A.2d 1133.

As in *Simpson,* the doctrine of substantial compliance is not applicable in this case. The notice requirement contained in SG § 12–106(b)(1) is a "condition precedent to filing suit

against the State." *Conaway*, 90 Md.App. at 240, 600 A.2d 1133. The primary purpose of that requirement is to permit the State to timely investigate the incident and to respond to the claim. The legislature has set the notice period at one year. Because the Treasurer received Candeloro's written claim more than one year after the date of injury, the claim was not timely submitted. Although the claimant in *Simpson* failed to file *any* claim, we see little difference between that scenario and this case. If the purpose of the required notice is to permit a timely investigation and the legislature has determined that a timely claim is a claim submitted within one year, a claim that is not received within that time frame is untimely and, in effect, "an outright failure to comply." The circuit court did not err.

## II.

Candeloro argues that the circuit court erred by granting summary judgment on the malicious prosecution claim because there was no probable cause supporting the criminal charges. She contends that "utilizing a traffic violation as subterfuge to enable [appellees] maliciously to bring unwarranted charges, unsupported by any probable cause, against an innocent victim is a practice neither the law nor our society can tolerate."

When reviewing a grant of summary judgment, "we are 'most often concerned with whether a dispute of material fact exists.'" *Muthukumarana v. Montgomery County*, 370 Md. 447, 473, 805 A.2d 372 (2002) (quoting *Lippert v. Jung*, 366 Md. 221, 227, 783 A.2d 206 (2001)). If there is none, then we determine if the motions court was legally correct. *Schmerling v. Injured Workers' Ins. Fund*, 368 Md. 434, 443, 795 A.2d 715 (2002). We review the legal conclusions *de novo*. *Muthukumarana*, 370 Md. at 473, 805 A.2d 372. When an appeal concerns the grant of summary judgment, we will consider only the grounds upon which the lower court relied in granting summary judgment. *PaineWebber Inc. v. East*, 363 Md. 408, 422, 768 A.2d 1029, 1036 (2001).

In the complaint, the count for malicious prosecution provided:

63. [Candeloro] alleges, herein, as if fully set forth, all factual allegations of the previously numbered paragraphs.

64. The false arrest and imprisonment of ... Candeloro, by ... [Trooper] Cole, resulted in the prosecution of [Candeloro] in the District Court and Circuit Court for Baltimore County as aforesaid.

65. In addition thereto, [Trooper] Cole, drafted and filled out a narrative statement of probable cause as a "basis" for the false charges he lodged against ... Candeloro. The allegations that ... [Trooper] Cole made in the statement of probable cause were completely false despite the fact that they were made under oath.

66. [Trooper] Cole acted with malice and without probable cause in causing the charges against ... Candeloro to be lodged and in prosecution of the case. Malice was the primary purpose of [Trooper] Cole in instituting the proceedings against Candeloro.

67. The proceedings were terminated in [Candeloro's] favor, and there was an absence of probable cause for that in any event.

68. As a result of [Trooper] Cole's conduct and actions, Candeloro has suffered, and will continue to suffer, severe mental anguish, loss of reputation, medical and other related expenses, and loss of income.

In establishing a claim for malicious prosecution, a plaintiff must prove the following four elements:

1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceeding in favor of the plaintiff.

*Heron v. Strader,* 361 Md. 258, 264, 761 A.2d 56 (2000). Concerning the fourth element, a criminal proceeding is terminated when any of the following occur: a judge discharges the

accused at a preliminary hearing, "refusal of a grand jury to indict, 'the formal abandonment of the proceedings by the public prosecutor,' quashing of an indictment or information, acquittal, or a final order in favor of the accused by a trial or appellate court." *State v. Meade,* 101 Md.App. 512, 530, 647 A.2d 830 (1994) (quoting *Restatement (Second) of Torts,* § 659). If the facts are undisputed about the termination of a proceeding, then a "court has no need for a finding of the jury." *Palmer Ford, Inc. v. Wood,* 298 Md. 484, 498–99, 471 A.2d 297 (1984).

The malicious prosecution claim adopted "all factual allegations of the previously numbered paragraphs" and referred to the "charges [Trooper Cole] lodged against ... Candeloro," but did not identify the charges resulting from the incident. The charges included assault, resisting arrest, disorderly conduct, wearing and carrying mace, and disobeying the lawful order of a police officer. At trial, the State *nolle prossed* all of the charges except disobeying the lawful order of a police officer, for which Candeloro was convicted. Because the outcome of the proceeding was not favorable to Candeloro, the malicious prosecution claim failed as a matter of law.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**