915 A.2d 448

**Andrew POPE, III**

v.

**Mark BARBRE.**

**No. 2386 Sept.Term, 2005.**

Court of Special Appeals of Maryland.

Jan. 25, 2007.

**392**

394

Linda T. Cox (Thomas F. Ellis, III, on the brief), Annapolis, MD, for Appellant.

John F. Breads, Jr., Columbia, MD, for Appellee.

Panel: HOLLANDER, ADKINS, and LAWRENCE F. RODOWSKY, (Retired, Specially Assigned), JJ.

ADKINS, Judge.

Andrew Pope, III, appellant, suffered paralyzing injuries when Mark Barbre, appellee and Queen Anne's County Deputy Sheriff, shot him in the neck following a traffic stop. The Circuit Court for Queen Anne's County granted summary judgment on Pope's claims against Barbre, and dismissed his claims against the State of Maryland and Queen Anne's County, because Pope mistakenly notified Queen Anne's County of his claim under the Maryland Tort Claims Act (MTCA), rather than notifying the State Treasurer or one of two specified designees.[1] Pope challenges those rulings, arguing that he

---

1. The dismissal of the second amended complaint naming the State of Maryland as a defendant eliminated the State as a party to this lawsuit.

complied with the mandatory notice requirements of Md.Code (1984, 2004 Repl.Vol.), section 12–106(b) of the State Government Article (SG), and that such notice is not a prerequisite to his claim against Barbre individually.

We are not persuaded that the "substantial compliance" doctrine under the Maryland Tort Claims Act can be expanded to encompass such defective notice. But we agree that the statutory notice requirement did not apply to Pope's claim against Barbre individually.

## FACTS AND LEGAL PROCEEDINGS

On March 17, 2004, Barbre shot Pope in the course of his law enforcement duties, after stopping Pope's vehicle in Grasonville. Pope was partially paralyzed, between his neck and waist, and now has limited use of his arms and hands.

Five months after the shooting, on August 12, 2004, Pope's attorney sent a certified letter to Benjamin F. Casell, Jr., Queen Anne's County Commissioner. The letter purported to "constitute the requisite 180 day notice under the Local Government Tort Claims Act, 5–304 of the Courts and Judicial Proceedings Act of the Maryland Annotated Code." [2] Counsel advised that the "letter will be followed by a law suit against Queen Anne's County alleging that Deputy Barbre acted with malice when he shot my client[.]" Counsel copied the letter to the County Attorney for Queen Anne's County.

On April 19, 2005, Pope filed a complaint in the Circuit Court for Montgomery County, naming Barbre and the Queen Anne's County government as defendants. In the caption, Pope served the complaint on Commissioner Cassell, as repre-

---

Pope challenges that ruling. For reasons unexplained in the record, the State did not participate as a party to this appeal. Instead, the State was granted leave to file a brief as *amicus curiae,* and did so.

**2.** Md.Code (1974, 2004 Repl.Vol.), section 5–304(b) of the State Government Article provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury."

sentative of Queen Anne's County (hereafter, the "County"). As insurer for the County,[3] the Local Government Insurance Trust (LGIT) entered its appearance on behalf of both Barbre and the County, then moved for dismissal or summary judgment in favor of both defendants. Counsel for LGIT asserted that the County is not a proper party to the lawsuit and that the time for suing under the Maryland Tort Claims Act (MTCA) had expired. Specifically, the LGIT argued: (1) Barbre is classified as "State Personnel" for purposes of tort claims against him, so that (2) the County is not liable for any tort Barbre may have committed; (3) Barbre instead is amenable to suit only under the MTCA, but (4) Pope did not satisfy the MTCA requirement of notice to the State Treasurer, so that (5) Pope failed to obtain the waiver of sovereign immunity that is necessary to sue Barbre and the State.

On May 13, 2005, fourteen months after the altercation, counsel for Pope hand delivered to the State Treasurer a letter stating:

> Although you may have already received notice of Mr. Pope's claim via my August 12, 2004 letter to Queen Anne's County Commissioner Benjamin Cassell, and via my March 7, 2005 Freedom of Information Act Request to Queen Anne's County Sheriff Charles Crossley . . . this letter will ensure that you have received direct notice of Mr. Pope's intent to pursue his claim.

Pope twice amended his complaint while the County's motion to dismiss or for summary judgment was pending. The first amendment dropped the County as a defendant, leaving only the individual claim against Barbre. The second amended complaint renamed the County and added the State of

---

**3.** Under Md.Code (1985, 2006 Repl.Vol.), section 9–108 of the State Finance & Procurement Article (SFP), county governments are obligated to defend and pay judgments and settlements in cases involving deputy sheriffs engaged in the law enforcement functions at issue in this case. As detailed *infra,* the county may obtain insurance to defend and pay any such judgment or settlement, or have such expenses assessed and set off against tax revenue earmarked for that county. *See* SFP § 9–108(b)–(c).

Maryland as defendants. All three defendants moved to strike the second amended complaint, on the grounds previously asserted in the motion filed by the LGIT.

The circuit court granted the motion to strike the second amended complaint, leaving only Barbre as a defendant. At the same time, the court also granted summary judgment on all claims against Barbre in the first amended complaint. Pope noted this appeal, presenting four issues [4] that we reduce to two questions:

I. Did the notice of claim that Pope sent to Queen Anne's County satisfy the notice requirement in section 12–106 of the Maryland Tort Claims Act?

II. Did the circuit court err in striking Pope's second amended complaint?

In addition, Pope raises a third issue in his brief, arguing:

III. The circuit court erred in granting summary judgment on the claims against Barbre in his individual capacity because "[t]here is no MTCA requirement to notify a State employee of claims asserted against him or her on an individual basis."

We find no error in the ruling that Pope's failure to provide timely notice to the State Treasurer barred his claims against

---

**4.** Pope presents the following issues in his brief:

I. Do §§ 9–101 et seq. of the State Procurement Article authorize a municipal designee or insurer of the State Treasurer to receive a § 12–106 Maryland Tort Claims Act notice?

II. Does Plaintiff's provision of timely written notice to Queen Anne's County, the State Treasurer's municipal designee, insurer and/or agent substantially compl[y] with the MTCA notice requirement?

III. Is the award of summary judgment to a moving defendant appropriate on the issue of MTCA notice where a plaintiff has substantially complied with the notice requirements by timely notifying the Treasurer's designee also acting as the State's insurer of his pending cause of action?

IV. Is a trial court's granting of a motion to strike plaintiff's timely filed second amended complaint improper when the moving party is not prejudiced by plaintiff's filing, having previously tendered its written defense to claims of the amended pleadings?

the State. Although we shall affirm the decision to strike the second amended complaint, we reverse the judgment in favor of Barbre on Pope's individual claim against him, because notice to the State Treasurer is not a prerequisite for suing a sheriff's deputy in his individual capacity for torts allegedly committed with malice or gross negligence.

## DISCUSSION

### Tort Claims Against A Deputy Sheriff

"Grounded in ancient common law, the doctrine of sovereign immunity bars individuals from bringing actions against the State, thus protecting it from interference with governmental functions and preserving its control over its agencies and funds." *Condon v. State of Maryland–Univ. of Md.*, 332 Md. 481, 492, 632 A.2d 753 (1993). "By waiving the State's tort immunity, the [Maryland Tort Claims Act has] afforded a remedy for individuals injured by tortious conduct attributable to the State." *Id.*

Title 12 of the State Government Article (SG) governs immunity and liability of State, local, and municipal entities. Subtitle 1 is the Maryland Tort Claims Act (MTCA), in which the State both defines the extent to which it waives its sovereign immunity and creates statutory immunity for State personnel.

With respect the State itself, as well as its units,[5] the MTCA provides that the sovereign "immunity of the State and of its units is waived as to a tort action," with certain "exclusions and limitations" specified in this subtitle. *See* SG § 12–104(a). With respect to individual liability, the MTCA provides that "State personnel shall have the immunity from liability described under § 5–522(b) of the Court and Judicial Proceedings Article" (CJP). *See* SG § 12–105. This immuni-

---

**5.** "The [sovereign immunity] doctrine is applicable to the State's agencies and instrumentalities, unless the legislature has explicitly or by implication waived governmental immunity." *Condon v. State of Maryland–Univ. of Md.*, 332 Md. 481, 492, 632 A.2d 753 (1993).

ty extends to the sheriff and deputy sheriff of a county, who are included within the definition of "State personnel." *See* § 12–101(a)(6). In turn, CJP (1974, 2006 Repl.Vol.), section 5–522(b) provides:

> (b) *In general.*—State personnel, as defined in § 12–101 of the State Government Article, are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, *and for which the State or its units have waived immunity* under Title 12, Subtitle 1 of the State Government Article. . . . (Emphasis added.)

 Through this *quid pro quo,* the MTCA substitutes State tort liability for an individual State employee's tort liability. As Judge Greene explained while he was a member of this Court,

> a party can bring a viable tort action against the State when the tort was committed by a State employee acting within the scope of his or her employment and without malice or gross negligence. Thus, the State has accepted vicarious liability arising from the tortious conduct of State personnel.

> The MTCA also clearly provides that a State employee acting within his or her scope of employment and without malice or gross negligence is immune from suit. If, however, the State employee has acted with malice or gross negligence, or the State employee has acted outside the scope of his or her employment, the State is immune from suit and the injured party may only bring a viable tort claim against the State employee.

*Ford v. Baltimore City Sheriff's Ofc.,* 149 Md.App. 107, 120–21, 814 A.2d 127 (2002). Thus, "[t] he purpose of MTCA immunity is not simply to protect judgmental decisions by officials, but to insulate state employees generally from tort liability if their actions are within the scope of employment and without malice or gross negligence[.]" *Lee v. Cline,* 384 Md. 245, 261, 863 A.2d 297 (2004).

One of the statutory "exclusions and limitations" on tort actions against the State and its units is the notice requirement that lies at the heart of this appeal. SG section 12–106(b) provides in pertinent part:

(b) *Claim and denial required.*—A claimant may not institute an action under this subtitle unless:

(1) the claimant submits a written claim **to the Treasurer or a designee of the Treasurer** within 1 year after the injury to person or property that is the basis of the claim;

(2) the Treasurer or designee denies the claim finally; and

(3) the action is filed within 3 years after the cause of action arises. (Emphasis added.)

Complementing this notice requirement is a service requirement in SG section 12–108(a), which provides that, "[i] n an action under this subtitle, service of the complaint and accompanying documents is sufficient only if made on the Treasurer." Moreover, by regulation, the State Treasurer has explained that,

[f]or purposes of the provisions of State Government Article 12–106 .... [p]resentation of a purported claim to any unit of State Government other than the State Treasurer's Office does not constitute proper submission of a claim[.]

COMAR 25.02.03.01.B.

Consistent with this scheme, the definition of "Treasurer's designee" is limited to specified officials in the State Treasurer's Office:

(a) "Treasurer's designee" means only the:

(i) Chief Deputy Treasurer; or

(ii) Director of the Insurance Division of the State Treasurer's Office.

(b) **"Treasurer's designee" does not mean or include any other person,** including, but not limited to:

(i) An officer or employee of State government other than those persons identified in § B(7)(a), above;

(ii) The Comptroller of the Treasury, the Attorney General, or the Secretary of State; or

(iii) A commercial insurer, adjuster, claims administrator, or similar person who provides services to the Treasurer as an independent contractor.

COMAR 25.02.01.02.B(7) (emphasis added).

## I.

### The Court Properly Dismissed Pope's Claim Against The State

The motion court dismissed the second amended complaint naming the State of Maryland as a defendant, on the ground that Pope did not satisfy the SG section 12–106(b) notice requirement. Pope challenges that ruling.[6]

It is undisputed that Pope did not notify the State Treasurer of his claim within the one year period mandated in SG section 12–106(b). Neither did Pope provide notice to one of the State Treasurer's two designees. Nevertheless Pope urges us to hold that the August 12 notice to the Queen Anne's County Commissioner satisfied the MTCA notice requirement, either because the Commissioner qualifies as a Treasurer's "designee" or because such notice substantially complies with section 12–106(b). We cannot legally justify such a holding.

### A.

### The County Commissioner Is Not A "Treasurer's Designee"

■ To dispose of Pope's contention that a county commissioner may serve as the State Treasurer's "unofficial designee," we need look no farther than the State Treasurer's Office itself. By duly promulgated regulation, it has explicitly spelled out who is—and who is not—a "Treasurer's designee" for purposes of accepting notice of tort claims under the MTCA. County commissioners are not on the Treasurer's short list of two designees (*i.e.*, the Chief Deputy Treasurer

---

6. Although the State did not participate as a party to this appeal, its brief as *amicus curiae* presented the State's views on this notice issue.

and the Director of the Insurance Division of the State Treasurer's Office), both of whom work within the State Treasurer's Office. *See* COMAR 25.02.01.02.B.7(a). To prevent any misunderstanding, the regulation unequivocally states that " 'Treasurer's designee' does not mean or include any other person[.]" *See* COMAR 25.02.01.02.B(7)(b). Consequently, county commissioners do not qualify as a Treasurer's designee for MTCA notice purposes.

Pope's contention that the County's financial responsibility for any judgment against Deputy Sheriff Barbre renders Queen Anne's County "the State's designee" for MTCA notice purposes is similarly foreclosed by the clear language of the statute and regulations. The insurance provisions in section 9–101 *et seq.* of the State Finance and Procurement Article simply do not authorize a county commissioner or municipal insurer to receive an MTCA notice on the Treasurer's behalf.

To be sure, Title 9 of that article creates a "program of purchased insurance and self-insurance against loss, damage, and liability that the State may incur." Md.Code (1985, 1988, 2006 Repl.Vol.), § 9–102(a) of the State Finance and Procurement Article (SFP). Under SFP section 9–108, which "applies to any sheriff or deputy sheriff engaged in" law enforcement functions such as the altercation at issue here,

(b) *Insurance authorized.*—A county or Baltimore City may obtain insurance to provide the coverage and defense necessary under the Maryland Tort Claims Act for personnel covered by this section.

(c) *Failure to obtain insurance.*—(1) If a county or Baltimore City does not obtain adequate insurance coverage to satisfy the coverage and defense necessary under the Maryland Tort Claims Act, an assessment for coverage and for payment of any litigation expenses, other than for compensation for the time spent by any State employee working for the Attorney General, shall be set off from:

(i) any tax which has been appropriated in the State budget to the county or Baltimore City; or

(ii) the subdivision's share of any income tax collected by the State Comptroller.

Yet Pope's "unofficial insurer" argument fails to address the absence of any reference to the MTCA notice requirement in these or any other provisions of Title 9. It also fails to account for the Treasurer's unequivocal rejection of notice to persons other than the two identified designees. This is not a mere matter of "semantics" as Pope contends. If neither the Comptroller, nor the Attorney General, nor any other State officer, nor an "insurer ... who provides services to the Treasurer as an independent contractor" qualifies as a Treasurer's designee, *see* COMAR 25.02.01.02.B(7)(b)(i)-(iii), then neither does a county officer such as a county commissioner.

## B.

### Pope Did Not Substantially Comply With The Statutory Notice Requirement

■ Turning to Pope's alternative "substantial compliance" argument, we are constrained by the language of the MTCA, as it has been interpreted by case law. The language of section 12–106(b) has been construed consistently as barring suits in which notice mistakenly was not given at the right time or to the right person. Both the Court of Appeals and this Court have refused to expand the concept of substantial compliance to encompass such situations.

Recently, in *Candelero v. Cole,* 152 Md.App. 190, 831 A.2d 495 (2003), this Court declined to hold that the claimant substantially complied with SG section 12–106(b) by mailing notice on the deadline, rather than ensuring that it was received by that date as required by statute and regulation. In doing so, we reviewed the narrow circumstances in which the substantial compliance doctrine has been successfully invoked:

> The Court of Appeals has recognized the existence of a substantial compliance argument under the MTCA. In *Condon,* 332 Md. at 496, 632 A.2d 753 (quoting *Conaway v. State,* 90 Md.App. 234, 246, 600 A.2d 1133 (1992)), the Court

accepted our definition of substantial compliance as a "communication that provides the State 'requisite and timely notice of facts and circumstances giving rise to the claim.'" (Emphasis supplied.) "The doctrine of substantial compliance, however, is not license to ignore the clear mandate of the MTCA," *Chinwuba v. Larsen,* 142 Md.App. 327, 355, 790 A.2d 83 (2002), and cannot serve as a springboard for judicial legislation. Provisions such as this, and the canon of construction favoring a liberal interpretation of remedial legislation, are helpful in resolving ambiguities in statutes, but do not permit us to expand the statute to afford relief where the words of the statute bar that relief. *Simpson v. Moore,* 323 Md. 215, 227, 592 A.2d 1090 (1991). Those principles are illustrated in two cases, *Simpson, supra,* and *Conaway, supra.*

In *Simpson,* the case was dismissed because the claimant failed to file a written claim within 180 days after the accident. The claimant argued that the legislature intended the notice requirement in SG § 12–106(b)(1) to contain the same provision as that contained in Md.Code (1974, 1984 Repl.Vol.), § 5–306 of the Courts & Judicial Proceedings Article ("CJ"), permitting waiver of the notice requirement, under certain circumstances, in a case filed under the Local Government Tort Claims Act. The Court of Appeals declined to incorporate that waiver provision into SG § 12–106, stating that the legislature could have done so, if it wanted, by amendment. Thus, because there was an "outright failure" by the claimant to file a written claim, and compliance was "a condition precedent to the maintenance of a claim against the State," the doctrine of substantial compliance was not applicable. *Simpson,* 323 Md. at 228–29, 592 A.2d 1090.

In *Conaway,* a prisoner filed a timely claim with the Treasurer, but did not demand specific damages as required by SG § 12–107(a). Applying the doctrine of substantial compliance, we held that while the claim "did not literally comply with all of the requirements of [SG] § 12–107(a)," it provided the State with "sufficient written notice of the

circumstances" of the accident to allow it to "investigate the claim and respond either by settlement or defense." *Conaway*, 90 Md.App. at 250, 600 A.2d 1133 (quoting *Adams v. United States*, 615 F.2d 284, 289 (5th Cir.1980)). In so holding, we distinguished *Simpson*, stating that the claimant in that case had "provided no notice to the State." *Conaway*, 90 Md.App. at 241, 600 A.2d 1133.

*Id.* at 197, 831 A.2d 495.

The situation presented in *Candelero* differed from *Simpson* in that notice was provided, albeit late, and from *Conaway*, in that the notice included a specific claim for damages. This Court held that the claimant nonetheless failed to substantially comply with the notice requirement because the notice was not timely.

As in *Simpson*, the doctrine of substantial compliance is not applicable in this case. The notice requirement contained in SG § 12–106(b)(1) is a "condition precedent to filing suit against the State." *Conaway*, 90 Md.App. at 240, 600 A.2d 1133. The primary purpose of that requirement is to permit the State to timely investigate the incident and to respond to the claim. The legislature has set the notice period at one year. Because the Treasurer received Candelero's written claim more than one year after the date of injury, the claim was not timely submitted. Although the claimant in *Simpson* failed to file any claim, we see little difference between that scenario and this case. If the purpose of the required notice is to permit a timely investigation and the legislature has determined that a timely claim is a claim submitted within one year, a claim that is not received within that time frame is untimely and, in effect, "an outright failure to comply."

*Id.* at 197–98, 831 A.2d 495.

As we recognized in *Candelero*, our decision in *Conaway* did not address whether notice given to someone other than the State Treasurer or designee could "substantially comply" with section 12–106(b). No Maryland court has held that such substituted notice is satisfactory. To the contrary, in *Chinwu-*

*ba v. Larsen,* 142 Md.App. 327, 357, 790 A.2d 83 (2002), *aff'd in part, rev'd in part on other grounds,* 377 Md. 92, 832 A.2d 193 (2003), we held that the language of the MTCA precluded the claimant's argument that notice given to the Attorney General substantially complied with section 12–106(b).

> The doctrine of substantial compliance . . . is not license to ignore the clear mandate of the MTCA. In *Condon,* the Court of Appeals warned that courts may not "infer an intent where the legislature has clearly indicated the contrary." Similarly, in *Simpson,* the Court . . . . explained that "[p]rovisions such as this, and the canon of construction favoring a liberal interpretation of remedial legislation, are helpful in resolving ambiguities in statutes, but do not permit us to expand the statute to afford relief where the words of the statute bar that relief." We may not " 'judicially place in the statute language which is not there' in order to avoid a harsh result." Thus, "we will not extend or suspend the filing requirements when they are so clear and unambiguous."
>
> We find no ambiguity in subsections 12–106(b) and 12–108(a), either when they are considered alone or *in pari materia.* Both subsections unambiguously state that notice of any MTCA claim must be directed and delivered to the Treasurer. In fact, the sole purpose of subsection 12–108(a) is to instruct claimants that the one and only method of satisfying this notice requirement is to serve the claim on the Treasurer. **If we were to accept Chinwuba's contention that notice to the Attorney General constitutes substantial compliance with subsections 12–106(b) and 12–108(a), we would be judicially legislating subsection 12–208(a) out of the MTCA. We will not ignore its clear language.**

*Id.* at 355–56, 790 A.2d 83 (citations omitted and emphasis added).

This reasoning is equally applicable to Pope's contention that substitute notice to a county commissioner satisfies the Treasurer notice requirement in section 12–106(b). The clear language of the MTCA controls our conclusion that such

notice does not satisfy the statutory requirement of notice to the State Treasurer or designee.

We recognize that there is equitable appeal to Pope's contention that this case is unlike any other "substantial compliance" case, in that the County, which was the recipient of the timely notice, is precisely the entity that will bear ultimate financial responsibility for any judgment entered against the State under the MTCA. Thus, the ultimate payor was in a position to do financial planning necessary in connection with the claim. Moreover, although the State might have to "front" the money to pay the County, there is a fool-proof mechanism for State recovery of that money from Queen Anne's County through the funding withholding provisions of SFP section 9–108(c). Also, the County likely stood in a good position to investigate the claim while memories were fresh, because a County deputy sheriff committed the alleged misconduct. With a claimant who may have suffered serious injury from wrongful acts of a law enforcement officer, it is somewhat tempting to let him have his day in court.

To do so, however, would be to improperly substitute these alternate policy considerations, for the judgment of the legislature enunciated in SG section 12–106(b). *See Simpson v. Moore*, 323 Md. 215, 227, 592 A.2d 1090 (1991) (" 'A court is not wholly free to rewrite a statute merely because of some judicial notion of legislative purpose' ") (quoting *Kaczorowski v. Mayor and City Council of Baltimore*, 309 Md. 505, 514, 525 A.2d 628 (1987)).

Moreover, were we to decide that these considerations justify the conclusion that Pope "substantially complied" with the statutory notice requirement, we would be expanding the "substantial compliance" doctrine beyond that recognized in any Maryland appellate decision. Even though Pope's notice may have gotten to the persons who might be in the best position to investigate, and to do the necessary financial planning, it is not up to us to decide whether that satisfied the statute when these are not the criteria for determining "substantial compliance" with SG section 12–106(b). Our duty is to

decide whether there was substantial compliance with the requirement that the *Treasurer* receive the notice. Following the appellate decisions discussed above, service on the County is not substantial compliance with section 12–106(b).

We are not persuaded otherwise by any of the cases cited by Pope concerning substantial compliance with the notice requirements of the Local Government Tort Claims Act. In *Johnson v. Maryland State Police*, 331 Md. 285, 291, 628 A.2d 162 (1993), "[t]he plaintiffs point[ed] out that the State created several reports of the accident, that the State interviewed the plaintiffs immediately after the accident, and that the State unsuccessfully prosecuted Johnson for an alleged traffic violation." The Court of Appeals, however, rejected the plaintiffs' contention that they substantially complied with the MTCA:

> The facts relied on by the plaintiffs might show that the State suffered no prejudice as a result of the plaintiffs' failure to comply with the administrative claim requirement. Nevertheless, the plaintiffs' argument confuses "substantial compliance" with "lack of prejudice."

*Id.*

Thus, the Court of Appeals made it clear that the "lack of prejudice" concept contained in the LGTCA waiver of notice provision, was not applicable in a MTCA action. *See* CJP § 5–304(d) In LGTCA action, ("unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given").

Pope's reliance on *Faulk v. Ewing*, 371 Md. 284, 808 A.2d 1262 (2002), is similarly misplaced. In that case, notice of the car accident for which the town of Easton might be liable was given to the town's insurer rather than the town itself. The Court of Appeals held that this constituted substantial compliance with the LGTCA notice requirements. *See id.* at 288, 808 A.2d 1262. It reasoned:

> This Court concluded in *Moore* and *Mendelson* that, due to the nature of [the third party claims administrator's] and

the County's intertwined and extensive claims administration systems and the high degree of control the County exercised over [the third party claims administrator's] activities, substantial compliance with the statutory notice requirement owed to Montgomery County resulted by virtue of the dealings between the claimants, their representatives, and [the third party claims administrator's]. *Moore [v. Norouzi]*, 371 Md. [154] at 169, 807 A.2d 632. "Substantial compliance turns on ensuring that the County [or local government] has sufficient actual notice to perform a proper and timely investigation." *Moore*, 371 Md. at 178, 807 A.2d 632. We stated:

> Consequently, where the tort claimant provides the local government, through the unit or division with the responsibility for investigating tort claims against that local government, or the company with whom the local government or unit has contracted for that function, the information required by § 5–304(b)(3) to be supplied, who thus acquires actual knowledge within the statutory period, the tort claimant has substantially complied with the notice provisions of the LGTCA.

*Moore*, 371 Md. at 178, 807 A.2d 632.

*Id.* at 301–02, 808 A.2d 1262.

In contrast, Queen Anne's County has no contractual obligation to the State Treasurer to conduct an immediate investigation of the accident and the State's potential liability for it, while the evidence was still fresh. *See id.* at 288, 808 A.2d 1262. Nor does Pope suggest that the county has an "intertwined and extensive claims administration systems" as was maintained by Montgomery Country with its claims administrator. *See id.* Nor does the State Treasurer exercise a high degree of control over Queen Anne's County, like the control Montgomery County exercised over the claims administrator's activities.

More recently, in *White v. Prince George's County*, 163 Md.App. 129, 877 A.2d 1129, *cert. denied*, 389 Md. 401, 885

A.2d 825 (2005), this Court recognized the limited scope of the Court of Appeals' holding in *Moore*:

> The Court recognized that "strict compliance with the notice provisions of the LGTCA is not always required; substantial compliance may suffice," *id.* at 171, 807 A.2d 632, "even though not all of the details prescribed have been complied with." *Id.* However, of import here, the Court underscored that "[t]here must be some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." *Id.*

There, we held that filing a complaint with the police department's internal affairs division about police brutality was not substantial compliance with the statutory notice requirement. *See id.* at 147, 877 A.2d 1129. *See also Wilbon v. Hunsicker*, No. 779, Sept. Term 2005, 172 Md.App. 181, 913 A.2d 678, 2006 WL 3821398, *8–9 (2006) (following *White* in holding that notice to the police department's "civilian review board" was not compliance with the LGTCA).

## II.

### The Court Did Not Prejudicially Err In Striking Pope's Second Amended Complaint

Pope complains that the court erred in striking his second amended complaint, because leave was not required to file that complaint, given the procedural posture of the case (*i.e.*, no trial date had been scheduled) and because the complaint alleges compliance with the notice provisions of the MTCA. Any error in striking that complaint was harmless given that lack of compliance with the notice requirements of the MTCA was apparent on the face of the complaint.

Pope concedes that he has no claim against the County. We have ruled in section I that he has no claim against the State due to his failure to provide the requisite MTCA notice. The claims asserted against Barbre in the second amended complaint are substantially similar to those Pope asserted against Barbre in his first amended complaint. The circuit court considered and ruled on those claims, and we address

them in this opinion. Thus, Pope was not prejudiced by the decision to strike the second amended complaint.

## III.

### Pope's Failure To Give The State Treasurer Notice Does Not Bar His Individual Claim Against Barbre

■ Pope argues that "the Circuit Court had no legal basis to grant judgment to Sheriff Barbre on the battery claims against him in his individual capacity," because "[t]here is no MTCA requirement to notify a State employee of claims asserted against him or her on an individual basis. Any such claims would have survived summary judgment." We agree.

The motion court's grant of summary judgment on the claims against Barbre in his individual capacity rests on the premise that the notice required under SG section 12–106(b) is a prerequisite to suing not only the State, but also any individual who is classified as State personnel. In *Chinwuba v. Larsen*, 142 Md.App. 327, 355–56, 790 A.2d 83 (2002), *aff'd in part, rev'd in part on other grounds*, 377 Md. 92, 832 A.2d 193 (2003), we held that such notice was not necessary to sue an individual State officer in his individual capacity for torts allegedly committed with malice or gross negligence, or outside the scope of employment.[7] In doing so, we "acknowledge[d] that there is a surprising lack of language in our case law directly addressing whether a claimant may assert a tort claim against an individual State employee without notifying the Treasurer in accordance with sections 12–106 and 12–108." *See id.* at 358, 790 A.2d 83. Nevertheless, we observed that the Court of Appeals "has not treated a plaintiff's failure to give notice to the Treasurer as a bar to such a claim against an individual State employee." *Id.*

---

7. The Court of Appeals ultimately decided that the State official was acting within the scope of his employment, but did not address the MTCA notice holding by this Court. *See Larsen v. Chinwuba,* 377 Md. 92, 109, 832 A.2d 193 (2003).

In *Chinwuba,* we followed the result in *Sawyer v. Humphries,* 322 Md. 247, 587 A.2d 467 (1991), a suit against an off-duty state trooper who allegedly beat up another motorist. In *Sawyer,* the Court of Appeals held that the plaintiffs' failure to give notice under SG section 12–106 barred a suit against both the State and the State Police, but did not bar a suit filed directly against the individual state trooper. *See id.* at 357–58, 587 A.2d 467. The *Sawyer* Court allowed the claim against the officer in his individual capacity to proceed on the ground that the complaint alleged conduct that could have been either malicious or outside the scope of employment, resulting in the loss of the governmental immunity provided by SG section 12–105. *See id.* at 260–61, 587 A.2d 467.

The outcomes in *Sawyer* and *Chinwuba* differ instructively from a case decided shortly after *Sawyer.* In *Simpson v. Moore,* 323 Md. 215, 231, 592 A.2d 1090 (1991), the Court of Appeals affirmed dismissal of negligence claims arising from the crash of a Maryland State Police helicopter, in which the plaintiff's wife was killed while working as a state trooper. Focusing on the MTCA claim against the State, the *Sawyer* Court held that the surviving spouse failed to substantially comply with section 12–106(b) because his claim was not received by the State Treasurer before the deadline.[8] *See id.* at 228–29, 592 A.2d 1090. In doing so, the Court rejected the claimant's suggestion that

> [t]he **State** waived its immunity, but imposed certain procedural requirements for the successful maintenance of a claim or action **against it.** The failure of the claimant to follow the procedural requirements established by the Act may result in the **loss of the claim,** but it does not have the effect of rescinding the grant of statutory immunity to State personnel accomplished by § 12–105. If this were not the case, a plaintiff could control the relative immunities and

---

8. Current SG section 12–106 requires notice to the State Treasurer within one year, but at the time Sawyer was decided, that statutory limitations period was 180 days. *See Candelero v. Cole,* 152 Md.App. 190, 195, 831 A.2d 495 (2003).

liabilities of the State and its personnel. A plaintiff could, for instance, choose to comply with § 12–106 and sue the State if he felt it would be to his advantage, or he could deliberately delay filing his claim and deprive the State employees of their entitled immunity under § 12–105. The legislature clearly could not have intended such a result. The plaintiff's claims **against the State** were not lost because of sovereign immunity, but because the plaintiff failed to comply with a legislatively created condition precedent to the maintenance of a claim against the State.

*Id.* at 230–31, 592 A.2d 1090 (emphasis added).

The *Simpson* Court's dismissal of the negligence claims against individual officers involved in the helicopter crash does not contradict the *Sawyer* Court's decision to proceed on the battery claim against the off duty officer involved in the "road rage" incident. While there was evidence in *Sawyer* that raised a triable issue as to whether the officer acted with malice or gross negligence, the claims arising from the police helicopter crash in *Simpson* were pleaded as simple negligence claims. As discussed above, SG section 12–105 immunizes State personnel for "merely" negligent acts committed within the scope of employment and without malice or gross negligence.

In *Simpson,* the negligence claims against the individual officers were dismissed due to the section 12–105 immunity covering negligence actions, not because the plaintiff failed to comply with the section 12–106 notice requirement. *See id.* at 230, 592 A.2d 1090. Thus, the *Simpson* Court did not address whether the plaintiff was obligated to give the State Treasurer notice as a condition precedent to asserting claims against the officers in their individual capacities.[9]

---

**9.** In *Candelero v. Cole,* 152 Md.App. 190, 831 A.2d 495 (2003), this Court affirmed summary judgment on claims against an individual Maryland State trooper, the Maryland State Police, and the State, arising from an altercation between an arresting officer and the plaintiff. *See id.* at 197–98, 831 A.2d 495. Notice of the claims was mailed on the last day for notice, but not received in the State Treasurer's office until two days later. In discussing the section 12–106 notice

Moreover, applying section 12–106(b) solely to claims made against the State and its units is consistent with the "the statutory purpose of SG § 12–106(b)(1), which is to 'give the State early notice of claims against it' " so that the Treasurer has adequate "opportunity to 'investigate the claims while the facts are fresh and memories vivid, and, where appropriate, settle them at the earliest possible time.' " *Candelero*, 152 Md.App. at 195–96, 831 A.2d 495 (quoting *Haupt v. State*, 340 Md. 462, 470, 667 A.2d 179 (1995)). Notice of a claim against an individual officer does not advance either of these purposes.

In sum, when the claimant alleges simple negligence, as in *Simpson*, section 12–105 immunity bars suit against the individual deputy sheriff. The claimant's sole remedy in that case would be against the State, but any such relief is precluded by the claimant's failure to give the State notice under SG section 12–106(b). When, as in this case, the claimant pursues tort remedies against an individual classified as State personnel, based on acts allegedly committed with malice or gross negligence, a requirement of notice to the State would not serve the investigation and settlement purposes underlying section 12–106(b). Nor would notice to individual State personnel serve such purposes. Thus, the State Treasurer does not require early notice of a claim against an individual officer alleging a malicious or grossly negligent tort.

**JUDGMENT AFFIRMED AS TO THE STATE OF MARYLAND AND QUEEN ANNE'S COUNTY. JUDGMENT VACATED AS TO DEPUTY SHERIFF BARBRE AND CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID ½ BY APPELLANT, ½ BY BARBRE.**

---

requirement, we focused on the regulation providing that a claim "shall be deemed to have been submitted as of the date it is actually received by the State Treasurer's office." COMAR 25.02.03.01(B). The claimant did not argue that section 12–106 notice was not required for a claim against an individual who acted outside the "scope of [his] public duties" or acted "with malice or gross negligence[.]" *See* CJP § 5–522(a)(4). Nor did we address that issue. We simply concluded that the circuit court did not err in ruling that the notice to the State was not timely. *See id.* at 194–98, 831 A.2d 495.