935 A.2d 699

Mark BARBRE

v.

Andrew POPE, III.

No. 17, Sept. Term, 2007.

Court of Appeals of Maryland.

Nov. 13, 2007.

John F. Breads, Jr., Columbia, William F. Brockman, Deputy Solicitor-General (Douglas F. Gansler, Atty. Gen., on brief), for petitioner.

Linda T. Cox, Annapolis (Thomas P. Ellis, III, on brief), for respondent.

James K. MacAlister, Maryland Trial Lawyers Assn., for respondent.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER, (Retired, specially assigned), DALE R. CATHELL, (Retired, specially assigned), JJ.

BATTAGLIA, J.

This case arises under the one year notice provision of the Maryland Tort Claims Act, Section 12–106(b)(1) of the State Government Article, Maryland Code (1984, 1995 Repl.Vol.).[1] We have been asked to determine whether the year notice provision is satisfied when a plaintiff timely delivers notice to a County Commissioner. We also have been asked to determine whether the Maryland Tort Claims Act ("MTCA") notice provision applies to claims against an individual otherwise covered under the Act's strictures, if the civil complaint, thereafter filed, alleges malice or gross negligence.

Two petitions for certiorari, both seeking review of the judgment of the Court of Special Appeals, were filed in this case. The first, filed by Deputy Sheriff Mark Barbre, who was one of the defendants below, posed the following questions:

1) Did the Court of Special Appeals err in holding that MTCA's mandatory notice requirement can be circumvented merely by alleging the existence of "malice or gross negligence" in a pleading filed years after an alleged injury?

2) Does allowing the MTCA's notice requirement to be circumvented simply by alleging that State personnel acted with malice or gross negligence violate one of the essential

1. Section 12–106(b)(1) of the State Government Article, Maryland Code (1984, 1995 Repl.Vol.), states:
(b) *Claim and denial required.*—A claimant may not institute an action under this subtitle unless:
(1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis for the claim....
The current Section 12–106(b)(1) of the State Government Article, Maryland Code (1984, 2004 Repl.Vol.), is substantively similar to the 1995 version.

purposes of the Act by depriving the State of the opportunity for a relatively contemporaneous investigation?

3) Did the Legislature intend that the MTCA's mandatory notice provision should be susceptible to the "pleader's pen"?

Two questions were posed by Andrew Pope, III, the plaintiff below:

1) Did the Court of Special Appeals err in holding that Pope's Notice of Claim to Queen Anne's County did not substantially comply with § 12–106 of the Maryland Tort Claims Act?

2) Is a Trial Court's granting of a Motion to Strike Plaintiff's timely filed Second Amended Complaint improper when the moving party is not prejudiced by Plaintiff's filing, having previously tendered its written defense to claims of the amended pleadings? [2]

We hold that Pope's notice delivered to the Queen Anne's County Commissioner did not expressly, nor substantially, comply with the MTCA. We conclude, however, that the allegations of Pope's complaints were sufficient to allege malice or gross negligence to preclude summary judgment under the MTCA on behalf of Barbre.

## I. Introduction

As alleged in the various complaints filed in the instant matter, on March 17, 2004, at approximately 12:30 p.m., Deputy Sheriff Mark Barbre of the Queen Anne's County

---

**2.** As a result of our holding, whether or not the Second Amended Complaint was stricken appropriately will no longer matter, because neither the State nor the County will be parties. Although the Second Amended Complaint was legally sufficient and should not have been stricken on the bases presented, *see Schmerling v. Injured Workers' Ins. Fund*, 368 Md. 434, 457, 795 A.2d 715, 728 (2002) (noting that amendments to pleadings are liberally allowed and should only be denied if "prejudice to the opposing party or undue delay results"; stating that no prejudice was suffered due to the belated answer because the defendant had previously denied all of the allegations), Pope, because Deputy Sheriff Barbre is the sole defendant, may choose to rely on the First Amended Complaint, in any event.

Sheriff's Office attempted to stop a truck driven by Andrew Pope, III. When Pope did not stop, Barbre followed him to Pope's home, whereupon Pope got out of his vehicle and raised his hands in surrender. At that point, Barbre approached Pope with his gun drawn and fired a single shot, striking Pope in the neck.

Five months later, on August 12, 2004, Pope's attorney sent Benjamin F. Cassell, Jr., a Queen Anne's County Commissioner, a certified letter, which was to "constitute the requisite 180–day notice under the Local Government Tort Claims Act." [3] The letter, which was copied to the Queen Anne's County Attorney, advised that it "will be followed by a law suit against Queen Anne's County alleging that Deputy Barbre acted with malice when he shot my client."

Pope did file a lawsuit on April 19, 2005 in the Circuit Court for Queen Anne's County, naming Barbre, both in his official capacity and in his individual capacity,[4] and Queen Anne's County as defendants. In the "Facts" portion of the Complaint, Pope stated in relevant part:

12. On or about March 17, 2004, at approximately 12:30 p.m., Defendant Sheriff Barbre attempted to stop a truck driven by Plaintiff Pope in Grasonville, Queen Anne's County, Maryland.

---

**3.** Section 5–304(a) of the Local Government Tort Claims Act, Courts and Judicial Proceedings Article, Maryland Code (1974, 2002 Repl. Vol.), provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." The current Section 5–304(b) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.), is substantively similar to Section 5–304(a) of the 2002 version.

**4.** The official/individual capacity distinction that is a part of 42 U.S.C. § 1983 does not apply to Maryland constitutional violations: "We simply hold in the present case that the particular and confusing dichotomy developed in § 1983 cases has no application to actions against individual government officials for money damages based on violations of Maryland constitutional rights." *Ritchie v. Donnelly,* 324 Md. 344, 373 n. 13, 597 A.2d 432, 446 n. 13 (1991).

13. As Plaintiff Pope continued driving his truck vehicle [sic] home, Defendant Sheriff Barbre followed Plaintiff Pope's vehicle into the driveway of Plaintiff's home. When Plaintiff Pope got out of the vehicle, raising his hands in surrender, Defendant Sheriff's Deputy Barbre approached him with his gun drawn and shot Plaintiff Pope in the neck.

14. At no time during the events described above was Plaintiff Pope intoxicated, incapacitated, a threat to the safety of himself or others, or disorderly.

15. Defendant Barbre had no warrant for the arrest of the Plaintiff and no legal cause or excuse to use excessive force against Plaintiff Pope or shoot Plaintiff in the neck.

In Count I, Pope alleged violations of Articles 24 and 26 of the Maryland Declaration of Rights by Barbre:

19. The shooting by Sheriff Barbre was entirely unjustified, was done intentionally, wantonly, recklessly, with gross negligence, malice and with complete indifference for Andrew Pope's rights and as a result was an unreasonable and excessive use of deadly force. These actions by Defendant Barbre deprived Mr. Pope of his clearly established rights under the Maryland Declaration of Rights to be: (a) free from the use of excessive and unreasonable force; and (b) free from the depravation of life and liberty without due process of law.

20. While acting under color of law and pursuant to his authority in his capacity as a Queen Anne's County Sheriff's Deputy, Deputy Sheriff Barbre shot Mr. Pope. Defendant Barbre failed to carry out proper Sheriff's procedures and protocol, failed to promulgate or enact appropriate Sheriff's procedure or protocol, failed to take reasonable actions to protect Mr. Pope and failed to control his actions in violation of the Maryland Declaration of Rights to be (a) free from the use of excessive and unreasonable force; and (b) from the depravation of life and liberty without due process of law. Defendant Sheriff Barbre had actual knowledge, or in the reasonable and diligent exercise of his duties should have known that he was violating Mr. Pope's clearly estab-

lished constitutional rights to be free from such depriva-
tions.

* * * * * *

22. Plaintiff Pope claims damages against Defendant Sher-
iff Barbre for the injuries set forth above for violation of his
constitutional rights under color of law under the Maryland
Declaration of Rights, in particular, Articles 24 and 26.

In Count II, Pope also alleged battery with respect to Barbre.
Count III alleged violations of Articles 24 and 26 of the
Maryland Declaration of Rights by Queen Anne's County.

Barbre and the County, collectively, filed a motion to dis-
miss, or in the alternative, for summary judgment. In es-
sence, the County argued that Barbre was covered by the
immunity and non-liability provisions of the MTCA rather
than the Local Government Tort Claims Act, such that the
County should not have been a defendant. Barbre contended
that because he was covered by the immunity and non-liability
provisions of the MTCA, Pope had to provide written notice
under the Act to the State Treasurer or a designee of the
State Treasurer within one year of the injury, and because he
failed to do so, Pope could not pursue a MTCA claim against
him.[5]

Pope filed an opposition to the Defendants' motion, arguing
that even assuming that Barbre were considered "state per-
sonnel" and therefore covered under the immunity and non-
liability provisions of the MTCA, "the notice provisions of the
MTCA are not a condition precedent to bringing an action
against an individual State employee." Even if he were re-
quired to provide notice under the MTCA in order to recover
against the State, Pope also contended that he complied with

---

5. Thereafter, Thomas C. Kelley, Director of the Insurance Division in
the State Treasurer's Office, attested, in an affidavit filed in the case,
that the State Treasurer's Office had not received a notice of claim from
Pope concerning the shooting by May 11, 2005. Two days later, on
May 13, 2005, fourteen months after Pope was injured, Pope's attorney
hand-delivered a letter to the State Treasurer, Nancy Kopp, explaining
Pope's intention to pursue his claim.

the notice provision because the State had had notice of the incident as a result of an investigation undertaken by the State Police and the State's Attorney for Queen Anne's County. Additionally, Pope argued that the notice to a County Commissioner complied with the MTCA because the County was providing defense counsel for Pope under the Local Government Insurance Trust,[6] and because the County would be ultimately responsible for the payment of any claim pursuant to Section 9–108 of the State Finance and Procurement Article.[7]

Pope also filed his First Amended Complaint, omitting the County as a defendant and only pursing his claims against Barbre, both in his official capacity and in his individual capacity, stating the same factual averments. In Count I, Pope again alleged violations of Articles 24 and 26 of the Maryland Declaration of Rights by Barbre; and in Count II, Pope again alleged battery with respect to Barbre.

Barbre then moved to dismiss the First Amended Complaint, or alternatively, for summary judgment, arguing that because Pope failed to comply with the MTCA notice statute,

---

**6.** The Local Government Insurance Trust was established by local governments to pool together funds to provide insurance protection to themselves and their employees. *Prince George's County v. Local Gov't Ins. Trust,* 388 Md. 162, 166, 879 A.2d 81, 84 (2005).

**7.** Section 9–108 of the State Finance and Procurement Article, Maryland Code (1985, 2001 Repl.Vol.), states in relevant part:

(b) *Insurance authorized.*—A county or Baltimore City may obtain insurance to provide the coverage and defense necessary under the Maryland Tort Claims Act for personnel covered by this section.
(c) *Failure to obtain insurance.*—(1) If a county or Baltimore City does not obtain adequate insurance coverage to satisfy the coverage and defense necessary under the Maryland Tort Claims Act, an assessment for coverage and for payment of any litigation expenses, other than for compensation for the time spent by any State employee working for the Attorney General, shall be set off from:
(i) any tax which has been appropriated in the State budget to the county or Baltimore City; or
(ii) the subdivision's share of any income tax collected by the State Comptroller.
(2) Any amount due under this subsection shall be collected in the manner provided by § 7–222 of this article.

the complaint should be dismissed. Subsequently, Pope amended his complaint for a second time, asserting claims not only against Barbre, both in his official capacity and in his individual capacity, but against the County and the State. In Counts I, IV and V, Pope added that Barbre, Queen Anne's County, and the State violated Article 19 of the Maryland Declaration of Rights, in addition to Articles 24 and 26. In Counts II and III, Pope alleged battery with respect to Barbre.

Barbre, the County, and the State moved to strike the Second Amended Complaint. Barbre argued that the amended pleading should be stricken because of the prejudice he experienced because of Pope's "dilatory tactics" in filing another amended complaint "just days away" from the motions hearing regarding the First Amended Complaint. Barbre also asserted, as did the State, that because Pope failed to notify the State Treasurer of his claim within one year of the date of injury to come within the MTCA, Pope's Second Amended Complaint should be stricken.

The circuit court resolved all outstanding motions by granting the motion to strike the Second Amended Complaint, thereby removing the State and the County as defendants, and by granting summary judgment in favor of Barbre as to all claims asserted in the First Amended Complaint. Pope filed a motion to alter or amend the judgments, essentially asking the court to reverse itself, which it refused to do.

Thereafter, Pope noted an appeal to the Court of Special Appeals, arguing that the circuit court had erred in granting the motion for summary judgment. Pope contended that he expressly complied with the MTCA notice statute when he delivered notice to a Queen Anne's County Commissioner. Pope also suggested that he substantially complied with the MTCA because he supplemented his notice to the State Treasurer on May 13, 2005, and thus the State was not prejudiced by the delay because the State had had notice of the incident as a result of an investigation undertaken by the State Police and the State's Attorney for Queen Anne's County. Addition-

ally, Pope contended that the purpose of the notice statute was satisfied because the County was the real party in interest because it was providing defense counsel for Pope under the Local Government Insurance Trust and would be ultimately responsible for the payment of any claim pursuant to Section 9–108 of the State Finance and Procurement Article. Additionally, Pope asserted that the circuit court erred in striking his Second Amended Complaint because neither Barbre, nor the State, nor the County demonstrated that they had suffered any prejudice.

The intermediate appellate court affirmed the judgments entered in favor of the State and Queen Anne's County and vacated the judgment entered in favor of Barbre. *Pope v. Barbre,* 172 Md.App. 391, 915 A.2d 448 (2007). The court rejected Pope's argument that because he notified a Queen Anne's County Commissioner, he complied with the MTCA notice requirement:

> To dispose of Pope's contention that a county commissioner may serve as the State Treasurer's "unofficial designee," we need look no farther than the State Treasurer's Office itself. By duly promulgated regulation, it has explicitly spelled out who is—and who is not—a "Treasurer's designee" for purposes of accepting notice of tort claims under the MTCA. County commissioners are not on the Treasurer's short list of two designees (*i.e.,* the Chief Deputy Treasurer and the Director of the Insurance Division of the State Treasurer's Office), both of whom work within the State Treasurer's Office. *See* COMAR 25.02.01.02.B(7)(a).[8] To prevent any misunderstanding, the regulation unequivocally states that " 'Treasurer's designee' does not mean or include any other person[.]" *See* COMAR 25.02.01.02.B(7)(b). Consequently, county commissioners do not qualify as a Treasurer's designee for MTCA notice purposes.

---

**8.** COMAR 25.02.01.02.B(7)(a) provides in pertinent part:
   (7) Treasurer's Designee.
   (a) "Treasurer's designee" means only the:
   (i) Chief Deputy Treasurer; or
   (ii) Director of the Insurance Division of the State Treasurer's Office.

*Id.* at 401–02, 915 A.2d at 454–55 (alteration in opinion). The court also rejected Pope's contention that he substantially complied with the MTCA notice requirement, even though Queen Anne's County was ultimately responsible for paying any judgment entered against the State in the case:

> The clear language of the MTCA controls our conclusion that such notice does not satisfy the statutory requirement of notice to the State Treasurer or designee.
>
> We recognize that there is equitable appeal to Pope's contention that this case is unlike any other "substantial compliance" case, in that the County, which was the recipient of the timely notice, is precisely the entity that will bear ultimate financial responsibility for any judgment entered against the State under the MTCA. Thus, the ultimate payor was in a position to do financial planning necessary in connection with the claim. Moreover, although the State might have to "front" the money to pay the County, there is a fool-proof mechanism for State recovery of that money from Queen Anne's County through the funding withholding provisions of SFP section 9–108(c). Also, the County likely stood in a good position to investigate the claim while memories were fresh, because a County deputy sheriff committed the alleged misconduct. With a claimant who may have suffered serious injury from wrongful acts of a law enforcement officer, it is somewhat tempting to let him have his day in court.
>
> To do so, however, would be to improperly substitute these alternate policy considerations, for the judgment of the legislature enunciated in SG section 12–106(b). *See Simpson v. Moore,* 323 Md. 215, 227, 592 A.2d 1090 (1991) ("'A court is not wholly free to rewrite a statute merely because of some judicial notion of legislative purpose'") (quoting *Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 514, 525 A.2d 628 (1987)).

*Id.* at 406–08, 915 A.2d at 457–58.

Additionally, the court concluded that the circuit court did not err in striking Pope's Second Amended Complaint, there-

by removing the State and the County from the case. As to the claims against the State and the County, the court stated that "Pope concede[d] that he ha[d] no claim against the County," and "[a]ny error in striking that complaint [with regard to the claims against the State] was harmless given that lack of compliance with the notice requirements of the MTCA was apparent on the face of the complaint." *Id.* at 410, 915 A.2d at 460. For the claims asserted against Barbre, the court noted that they were "substantially similar to those Pope asserted against Barbre in his first amended complaint," and thus, he was not prejudiced by the decision to strike the Second Amended Complaint. *Id.* at 410–11, 915 A.2d at 460.

The intermediate appellate court, in Pope's favor, however, determined that the MTCA statute did not apply to the claims asserted against Barbre individually because Pope had alleged that Barbre acted with "malice or gross negligence," and in doing so, permitted the claims against Barbre to proceed:

> In sum, when the claimant alleges simple negligence . . ., section 12–105 immunity bars suit against the individual deputy sheriff. The claimant's sole remedy in that case would be against the State, but any such relief is precluded by the claimant's failure to give the State notice under SG section 12–106(b). When, as in this case, the claimant pursues tort remedies against an individual classified as State personnel, based on acts allegedly committed with malice or gross negligence, a requirement of notice to the State would not serve the investigation and settlement purposes underlying section 12–106(b). Nor would notice to individual State personnel serve such purposes. Thus, the State Treasurer does not require early notice of a claim against an individual officer alleging a malicious or grossly negligent tort.

*Id.* at 414, 172 Md.App. 415, 915 A.2d 462.

Barbre and Pope both filed petitions for writs of certiorari, which we granted. *Barbre v. Pope,* 399 Md. 32, 922 A.2d 573 (2007). Barbre challenges the Court of Special Appeals' holding that Pope could pursue his claims against him individually

without complying with the MTCA notice statute; Pope challenges the Court of Special Appeals' decisions that he did not comply with the MTCA notice statute in order to proceed against the State and that the circuit court correctly struck his Second Amended Complaint.

We shall hold that Pope's notice to a Queen Anne's County Commissioner did not expressly or substantially comply with the MTCA notice statute. We also hold, however, that the allegations of Pope's complaints were sufficient to allege malice or gross negligence to preclude summary judgment under the MTCA on behalf of Barbre individually.

## II. Discussion

The entry of summary judgment is governed by Maryland Rule 2–501(e), which provides in pertinent part:

**Entry of judgment.** The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

We explicated the standard of review for the entry of summary judgment in *Serio v. Baltimore County,* 384 Md. 373, 863 A.2d 952 (2004), stating:

This Court reviews an order granting summary judgment *de novo.* *O'Connor v. Baltimore County,* 382 Md. 102, 110, 854 A.2d 1191, 1196 (2004); *Todd v. MTA,* 373 Md. 149, 154, 816 A.2d 930, 933 (2003); *Beyer v. Morgan State Univ.,* 369 Md. 335, 359, 800 A.2d 707, 721 (2002); *Schmerling v. Injured Workers' Ins. Fund,* 368 Md. 434, 443, 795 A.2d 715, 720 (2002); *see Fister v. Allstate Life Ins. Co.,* 366 Md. 201, 210, 783 A.2d 194, 199 (2001). In so doing, we must determine, initially, whether a dispute of material fact exists. Md. Rule 2–501(e) (2002); *see O'Connor,* 382 Md. at 110–11, 854 A.2d at 1196; *Todd,* 373 Md. at 154, 816 A.2d at 933; *Beyer,* 369 Md. at 359–60, 800 A.2d at 721; *Schmerling,* 368 Md. at 443, 795 A.2d at 720; *Lippert v. Jung,* 366 Md. 221, 227, 783 A.2d 206, 209 (2001). " 'A material fact is

a fact the resolution of which will somehow affect the outcome of the case.'" *Todd,* 373 Md. at 155, 816 A.2d at 933 (quoting *Matthews v. Howell,* 359 Md. 152, 161, 753 A.2d 69, 73 (2000)). The facts properly before the court as well as any reasonable inferences that may be drawn from them must be construed in the light most favorable to the non-moving party. *O'Connor,* 382 Md. at 111, 854 A.2d at 1196; *Todd,* 373 Md. at 155, 816 A.2d at 933; *Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118, 127 (2000). If the record reveals that a material fact is in dispute, summary judgment is not appropriate. *O'Connor,* 382 Md. at 111, 854 A.2d at 1196; *Todd,* 373 Md. at 155, 816 A.2d at 933; *Okwa,* 360 Md. at 178, 757 A.2d at 127. If no material facts are disputed, however, then we must determine whether the Circuit Court correctly granted summary judgment as a matter of law. *See* Md. Rule 2–501(e); *O'Connor,* 382 Md. at 111, 854 A.2d at 1197; *Todd,* 373 Md. at 155, 816 A.2d at 933; *Beyer,* 369 Md. at 360, 800 A.2d at 721; *Schmerling,* 368 Md. at 443, 795 A.2d at 720.

*Serio,* 384 Md. at 388–89, 863 A.2d at 961.

In statutory interpretation, our primary goal is always "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." *Dep't of Health & Mental Hygiene v. Kelly,* 397 Md. 399, 419–20, 918 A.2d 470, 482 (2007); *Gen. Motors Corp. v. Seay,* 388 Md. 341, 352, 879 A.2d 1049, 1055 (2005). We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that " 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.' " *Kelly,* 397 Md. at 420, 918 A.2d at 482; *Kane v. Bd. of Appeals of Prince George's County,* 390 Md. 145, 167, 887 A.2d 1060, 1073 (2005). Further, whenever possible, an interpretation should be given to the statutory provisions which does not lead to absurd consequences. *See Roskelly v. Lamone,* 396 Md. 27, 53, 912 A.2d 658, 673 (2006); *So. Easton Neighborhood Assoc. v. Town of Easton,* 387 Md. 468, 495, 876 A.2d 58, 74 (2005);

*Smack v. Dep't of Health & Mental Hygiene,* 378 Md. 298, 305, 835 A.2d 1175, 1179 (2003) ("[T]he statute must be given a reasonable interpretation, 'not one that is illogical or incompatible with common sense.'"). If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. *Kelly,* 397 Md. at 419, 918 A.2d at 482; *City of Frederick v. Pickett,* 392 Md. 411, 427, 897 A.2d 228, 237 (2006); *Davis v. Slater,* 383 Md. 599, 604–05, 861 A.2d 78, 81 (2004). If however, the language is subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose. *Kelly,* 397 Md. at 419–20, 918 A.2d at 482; *Mayor & Town Council of Oakland v. Mountain Lake Park,* 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006); *Canaj, Inc. v. Baker & Division Phase III,* 391 Md. 374, 403, 893 A.2d 1067, 1084 (2006).

## A. The Maryland Tort Claims Act—Barbre and the State

Under the MTCA, Barbre, as a Deputy Sheriff of Queen Anne's County, is classified as "state personnel." Section 12–101(a)(6) of the MTCA specifically provides that

"State personnel" means . . . a sheriff or deputy sheriff of a county or Baltimore City. . . .

Maryland Code (1984, 1995 Repl.Vol.), Section 12–101(a)(6) of the State Government Article.[9] The MTCA was enacted in 1981 as a waiver of the State's sovereign immunity for tortious acts or omissions committed within the scope of the public duties of "state personnel," and committed without malice or gross negligence. *See Kee v. State Highway Admin.,* 313 Md. 445, 448, 545 A.2d 1312, 1314 (1988). Under the immunity and non-liability provisions of the MTCA, "state personnel" are immune from suit and from liability in tort for acts or omissions committed within the scope of their public duties and

---

**9.** The current Section 12–101(a)(6) of the State Government Article, Maryland Code (1984, 2004 Repl.Vol.), is substantively similar to the 1995 version.

without malice or gross negligence, and when the State waives its immunity pursuant to the MTCA. Section 12–105 of the State Government Article, Maryland Code (1984, 1995 Repl. Vol., 1999 Supp.),[10] governing the liability of state personnel, states in relevant part:

> State personnel shall have the immunity from liability described under § 5–522(b) of the Courts and Judicial Proceedings Article.

Section 5–522(b) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2002 Repl.Vol.),[11] provides in part:

> State personnel, as defined in § 12–101 of the State Government Article, are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver.

Section 12–104(a)-(b) of the State Government Article, Maryland Code (1984, 1995 Repl.Vol., 1999 Supp.),[12] governs the State's waiver of immunity as to a tort action:

> (a)(1) Subject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, the immunity of the State and of its units is waived as to a tort action, in a court of the State....
>
> (b) Immunity is not waived under this section as described under § 5–522(a) of the Courts and Judicial Proceedings Article.

---

**10.** The current Section 12–105 of the State Government Article, Maryland Code (1984, 2004 Repl.Vol.), is substantively similar to the 1999 version.

**11.** The current Section 5–522(b) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.), is substantively similar to the 2002 version.

**12.** The current Section 12–104 of the State Government Article, Maryland Code (1984, 2004 Repl.Vol.), is substantively similar to the 1999 version.

Section 5–522(a) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2002 Repl.Vol.),[13] provides in part:

(a) Immunity of the State is not waived under § 12–104 of the State Government Article for:

\* \* \* \* \* \*

■ (4) Any tortious act or omission of State personnel that:

(i) Is not within the scope of the public duties of the State personnel; or

(ii) Is made with malice or gross negligence. . . .

As a result, the State does not waive its sovereign immunity for any tortious acts outside the scope of employment or when a "state personnel" acts with malice or gross negligence. *See e.g., Lee v. Cline,* 384 Md. 245, 267–70, 863 A.2d 297, 310–12 (2004), and cases cited therein, including *Sawyer v. Humphries,* 322 Md. 247, 587 A.2d 467 (1991). *See also Ennis v. Crenca,* 322 Md. 285, 296, 587 A.2d 485, 491 (1991) (holding that under the Local Government Tort Claims Act, local government employees are not shielded from liability for tortious acts committed outside the scope of employment).

Notice under the MTCA plays an integral part, however, in the invocation of waiver of the State's sovereign immunity. As originally enacted, the MTCA required claimants, prior to filing suit, to submit a claim to the State Treasurer; no specific time period was provided. Maryland Code (1974, 1980 Repl.Vol., 1983 Supp.), Section 5–406 of the Courts and Judicial Proceedings Article. In 1985, *see* 1985 Maryland Laws, Chapter 538, the General Assembly amended the notice requirement, and provided that, in any case a claimant must submit a "written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to person or property that is the basis of the claim." Maryland Code (1984, 1985 Supp.), Section 12–106(b)(1) of the State Govern-

---

**13.** The current Section 5–522(a) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.), is substantively similar to the 2002 version.

ment Article. The Legislature amended the notice provision again in 1995, *see* 1995 Maryland Laws, Chapter 437, to require a plaintiff to file notice of a claim with the State Treasurer or a designee of the Treasurer within one year after the injury:

> (b) *Claim and denial required.*—A claimant may not institute an action under this subtitle unless:
>
> (1) *the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis for the claim....*

Maryland Code (1984, 1995 Repl.Vol.), Section 12–106(b)(1) of the State Government Article (emphasis added).[14]

In order to comply with the MTCA, a plaintiff must serve written notice upon the State Treasurer, or a designee of the State Treasurer, within one year following the injury. Pursuant to Section 12–106(b)(1) of the MTCA, which states that written notice must be submitted to the State Treasurer "or a designee of the Treasurer," Maryland Code (1984, 1995 Repl. Vol.), Section 12–106(b)(1) of the State Government Article, the Office of the State Treasurer has promulgated interpretive regulations defining those designees. COMAR 25.02.01.02B(7) states:

(7) Treasurer's Designee.

(a) "Treasurer's designee" means only the:

(i) Chief Deputy Treasurer; or

(ii) Director of the Insurance Division of the State Treasurer's Office.

(b) "Treasurer's designee" does not mean or include any other person, including, but not limited to:

(i) An officer or employee of State government other than those persons identified in (§  ) B(7)(a), above;

---

**14.** The current Section 12–106(b)(1) of the State Government Article, Maryland Code (1984, 2004 Repl.Vol.), is substantively similar to the 1995 version.

(ii) The Comptroller of the Treasury, the Attorney General, or the Secretary of State; or

(iii) A commercial insurer, adjuster, claims administrator, or similar person who provides services to the Treasurer as an independent contractor.

Clearly, under the regulation, notice to a designee of the State Treasurer only embraces that given to the Chief Deputy Treasurer or the Director of the Insurance Division of the State Treasurer's Office. Pope expressly failed to meet the notice requirements of the MTCA when he only provided written notice to the State Treasurer on May 13, 2005, fourteen months after the injury, not within the one year time period prescribed by the MTCA. *See also Sawyer,* 322 Md. at 257–58, 587 A.2d at 471–72 (plaintiff failed to give any notice to the State under the MTCA, which precluded suit against both the State and the State Police).[15]

▪ Pope argues that his notice to a County Commissioner within the one year period substantially complied with the MTCA because he supplemented his notice to the State Treasurer on May 13, 2005,[16] and the State was not prejudiced by the delay because the State had had notice of the incident as a result of an investigation undertaken by the State Police and the State's Attorney for Queen Anne's County, citing *Faulk v. Ewing,* 371 Md. 284, 808 A.2d 1262 (2002); *Moore v. Norouzi,*

---

15. As applied in *Sawyer v. Humphries,* 322 Md. 247, 587 A.2d 467 (1991), the MTCA notice provision, Section 12–106 of the State Government Article, Maryland Code (1984, 1989 Supp.), stated:
(b) *Claim and denial required.*—A claimant may not institute an action under this subtitle unless:
(1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury . . . .

16. Pope appears to argue that the notice provided to the State Treasurer on May 13, 2005, after the one year time period had lapsed, "related back" to the notice he provided to the County. The MTCA notice provision, however, is " 'a condition precedent to the initiation of an action under the [MTCA]' " which must be met, "as opposed to a statute of limitations" for which "relation back" may apply. *See Johnson v. Md. State Police,* 331 Md. 285, 290, 628 A.2d 162, 164 (1993).

371 Md. 154, 807 A.2d 632 (2002); and *Conaway v. State,* 90 Md.App. 234, 600 A.2d 1133 (1992).

Pope's relies upon *Faulk,* 371 Md. at 284, 808 A.2d at 1262, and *Moore,* 371 Md. at 154, 807 A.2d at 632, both Local Government Tort Claim Act cases, to support his proposition that a claimant can substantially comply with the MTCA. The Local Government Tort Claims Act, however, by its express terms, permits judicial consideration of a claim about which the required notice was not given, when the plaintiff can show good cause, unless the defendant can affirmatively show prejudice:

> [A]n action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.

> \*    \*    \*    \*    \*    \*

> (d) Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.

Maryland Code (1974, 2006 Repl.Vol.), Section 5–304(b), (d) of the Courts and Judicial Proceedings Article.[17]   *See Rios v. Montgomery County,* 386 Md. 104, 140–45, 872 A.2d 1, 22–25 (2005).

Pope's one MTCA case, *Conaway,* 90 Md.App. at 234, 600 A.2d at 1133, was decided by the Court of Special Appeals before our decision in *Johnson v. Maryland State Police,* 331 Md. 285, 628 A.2d 162 (1993). In *Johnson,* on facts remarkably similar to this case, the plaintiffs failed to provide notice, but asserted that the State was not prejudiced and had

---

17. The version of the Local Government Tort Claims Act notice statute as applied in *Faulk* and *Moore,* Section 5–304 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1998 Repl.Vol., 2001 Supp.), is substantively similar to the current section.

created several reports about the accident. In language equally applicable here, we said:

> The facts relied on by the plaintiffs might show that the State suffered no prejudice as a result of the plaintiffs' failure to comply with the administrative claim requirement. Nevertheless, the plaintiffs' argument confuses "substantial compliance" with "lack of prejudice."
>
> In *Simpson v. Moore, supra,* 323 Md. at 218–229, 592 A.2d at 1091–1096, this Court specifically held that an action under the Maryland Tort Claims Act was barred by a failure to comply with the 180–day requirement, even though the State may have suffered no prejudice from the plaintiff's failure to comply with the requirement.
>
> As to substantial compliance itself, even assuming *arguendo* that it would suffice, there was no substantial compliance here. The plaintiffs have not pointed to any facts which would support their claim of substantial compliance. The plaintiffs did not undertake in any way to provide the State with notice of their claim; they rely solely on the State's own efforts in acquiring information about the incident. As we stated in *Simpson, supra,* 323 Md. at 228, 592 A.2d at 1096, "[t]he doctrine of substantial compliance has no application to an outright failure to comply." Even if the doctrine of substantial compliance is applicable to the 180–day claim filing requirement, an issue which we do not decide today, substantial compliance requires more than a mere lack of prejudice to the State.

*Johnson,* 331 Md. at 291–92, 628 A.2d at 165 (footnote omitted). Pope failed to provide written notice to the State Treasurer until May 13, 2005, fourteen months after the injury, not within the one year time period prescribed by the MTCA. Therefore, even assuming *arguendo* that substantial compliance was applicable, it cannot be invoked in the present case.

Nevertheless, Pope argues that the purpose of the notice statute was satisfied because the County was the real party in interest because it was providing defense counsel for Pope under the Local Government Insurance Trust and would be

ultimately responsible for the payment of any claim pursuant to Section 9–108 of the State Finance and Procurement Article. Section 9–108(b)-(c) of the State Finance and Procurement Article, Maryland Code (1985, 2001 Repl. Vol.), states in relevant part:

(b) *Insurance authorized.*—A county or Baltimore City may obtain insurance to provide the coverage and defense necessary under the Maryland Tort Claims Act for personnel covered by this section.

(c) *Failure to obtain insurance.*—(1) If a county or Baltimore City does not obtain adequate insurance coverage to satisfy the coverage and defense necessary under the Maryland Tort Claims Act, an assessment for coverage and for payment of any litigation expenses, other than for compensation for the time spent by any State employee working for the Attorney General, shall be set off from:

(i) any tax which has been appropriated in the State budget to the county or Baltimore City; or

(ii) the subdivision's share of any income tax collected by the State Comptroller.

(2) Any amount due under this subsection shall be collected in the manner provided by § 7–222 of this article.

■ Pope's contention that the County's financial responsibility for the defense and any judgment against Barbre renders notice to the County sufficient under the MTCA, however, fails to address the absence of any reference to the MTCA notice requirement in these or any other provisions of Title 9 of the State Finance and Procurement Article. The potential obligation to pay a tort judgment under the MTCA does not equate with the ability to receive notice thereunder.[18] Thus,

---

18. By analogy, we have not equated provisions regarding the payment of MTCA judgments with authorizing separate tort actions. We stated in *Boyer v. State,* 323 Md. 558, 573 n. 10, 594 A.2d 121, 128 n. 10 (1991):

With regard to certain tort judgments based on the negligence of a sheriff or deputy sheriffs acting in the scope of employment, the Maryland Board of Public Works may pay the judgments out of

we agree with the Court of Special Appeals, *Pope,* 172 Md. App. at 403, 915 A.2d at 455 (citations omitted), that "[i]f neither the Comptroller, nor the Attorney General, nor any other State officer, nor an 'insurer ... who provides services to the Treasurer as an independent contractor' qualifies as a Treasurer's designee, then neither does a county officer such as a county commissioner." In the case *sub judice,* Pope failed to provide written notice to the State Treasurer or a designee of the State Treasurer within one year of the injury, and thus summary judgment under the immunity and non-liability provisions of the MTCA was appropriate.

### B. The Maryland Tort Claims Act—Allegations of Malice or Gross Negligence Against Barbre

▆ Pope also alleged that Barbre acted maliciously and with gross negligence and argues before us that this brings Barbre outside of the protections of the immunity and non-liability provisions of the MTCA and that he should be able to proceed against Barbre individually on those claims. Conversely, Barbre contends that the MTCA is not contingent upon the plaintiff's pleadings, so the fact that Pope alleged that Barbre acted with malice or gross negligence is immaterial. The Court of Special Appeals agreed with Pope in its holding that "[w]hen, as in this case, the claimant pursues tort remedies against an individual classified as State personnel, based on acts allegedly committed with malice or gross negligence," the claims fall outside the MTCA and "the State Treasurer does not require early notice," *Pope,* 172 Md.App. at 414, 915 A.2d at 462; we disagree only to the extent that we have said that state personnel are not immune from suit and liability in tort when the plaintiff's complaint *sufficiently*

moneys due the county involved, depending in large measure upon the type of activity in which the sheriff or deputy sheriffs were engaged. *See* Ch. 508 of the Acts of 1990; Code (1984, 1990 Cum.Supp.), §§ 12–405(5) and 12–501(a)(1)(iv) of the State Government Article. These provisions regarding the payment of judgments, however, do not authorize tort actions against counties based on the negligence of State personnel acting within the scope of employment.

alleges malice or gross negligence. Therefore, the gravamen on this issue is whether the allegations of malice or gross negligence against Barbre are sufficient.

## Malice

In cases involving allegations of malice we have said that well-pled facts showing "ill-will" or "evil or wrongful motive" are sufficient to take a claim outside of the immunity and non-liability provisions of the MTCA. *See Lee,* 384 Md. at 245, 863 A.2d at 297; *Okwa v. Harper,* 360 Md. 161, 757 A.2d 118 (2000); *Sawyer,* 322 Md. at 247, 587 A.2d at 467. We have consistently defined malice as "conduct 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud....'" *Lee,* 384 Md. at 268, 863 A.2d at 311; *Williams v. Mayor & City Council of Baltimore,* 359 Md. 101, 131 n. 16, 753 A.2d 41, 57 n. 16 (2000) (stating that malice is characterized as "an evil or rancorous motive influenced by hate, the purpose being to deliberately and wilfully injure the plaintiff"). In *Shoemaker v. Smith,* 353 Md. 143, 725 A.2d 549 (1999), Judge Wilner, writing for this Court, stated:

> The Court of Special Appeals has long applied that, or some similar, standard of "actual malice" in defining "malice" for purposes of public official immunity under common law or under State and local tort claims laws.
>
> This, we believe, is the appropriate test-the one that the Legislature intended to be applied. For one thing, the fact that it is an alternative to gross negligence, which also will defeat the qualified immunity, indicates clearly that the Legislature conceived of malice as something beyond the merely reckless or wanton conduct that would be embodied within gross negligence.

*Id.* at 163–64, 725 A.2d at 560 (citations omitted).

We have considered what constitutes sufficient allegations of malice to enable a plaintiff to overcome a motion to dismiss or for summary judgment under the immunity and non-liability provisions of the MTCA. In *Lee,* 384 Md. at 245, 863

A.2d at 297, an African–American motorist, Lee, was stopped by a Frederick County Deputy Sheriff because his front license plate was not attached. In Lee's complaint, he alleged that the Deputy Sheriff asked to search his car; Lee refused. The Deputy Sheriff then told Lee that he did not need permission to search his car, and later referred to Lee as a "suspect." The complaint further alleged that Lee was detained for over 30 minutes while arrest and warrant checks were performed and a canine unit was brought to the scene. We concluded that Lee's complaint sufficiently alleged malice so that the Deputy Sheriff was not entitled to summary judgment under the MTCA:

> Lee's claim of malice is based on the following facts and inferences which are to be drawn in his favor. The traffic stop took far longer than warranted.... There is evidence in the record that Cline had completed similar stops in a shorter period of time, of between four and ten minutes. The record indicates that Cline had the information he needed to write the tickets within six minutes of the stop. Nonetheless, the stop took approximately forty minutes. During that time, Lee was clearly under arrest; Cline's order that Lee "get back" in the car reinforces this.
>
> Cline requested the canine "search" after Lee declined to consent to the search of his vehicle, when there was utterly no evidence in the record justifying such a "search" of the vehicle. Lee was driving with a valid license; he had no points or restrictions on his license, and was not wanted by the police. Lee had a reasonable and valid explanation for driving without a license plate, which was the initial justification for the stop. Nonetheless, Cline referred to Lee as a "suspect," without any reason to label him as such. Cline told the dispatcher that Lee was not "cooperative." A jury might reasonably infer that the only factors which motivated Cline's calling Lee an uncooperative "suspect" were that Lee was an African–American male driving a luxury car who refused to consent to a search.
>
> Lee argues, and we agree, that a "jury could infer ... that Deputy Cline deliberately prolonged the stop because ...

Lee refused to consent to a search of his car." (Petitioner's brief at 16). Cline's request to search Lee's automobile when there was no basis for such a search, Cline's retort that he could search the vehicle without Lee's permission, Cline's insistence on obtaining a canine unit, Cline's "yelling" at Lee to get back into the car, the length of the stop, and Cline's reference to Lee as an uncooperative suspect, taken together, could support an inference of ill-will on the part of Cline. A jury issue with regard to malice was generated.

*Id.* at 269–70, 863 A.2d at 312.

In *Okwa v. Harper*, 360 Md. at 161, 757 A.2d at 118, Okwa was involved in a dispute at the British Airways ticket counter at BWI Airport leading to his arrest by Maryland Transportation Authority police officers. Okwa alleged that the officers physically dragged him to the exit of the terminal, at which point he was forcibly thrown to the ground and struck in the back of the head and neck. We concluded that Okwa's allegations sufficiently pled malice so as to preclude the entry of summary judgment against him:

If a fact finder believed Mr. Okwa's rendition of the incident, however, it could infer reasonably that [the officers] were motivated by an improper motive or that they had an affirmative intent to bring harm to Mr. Okwa. It would not be unreasonable for a fact finder to infer that [the officers] were motivated by an extreme and overzealous desire to punish Mr. Okwa for failing to obey immediately their instructions to walk away from the ticket counter and exit the terminal. The alleged fact, if believed, that peace officers beat a citizen about his head and neck while they twisted his thumbs, could support an inference that [the officers] were inspired with malicious intention. Such behavior fits the type of conduct which would strip the actor's immunity otherwise provided under the MTCA. Because disputed material facts exist in the record, or inferences of malicious conduct may be drawn from Mr. Okwa's version of

the facts, the battery counts were not amenable to disposition via summary judgment.

*Id.* at 182, 757 A.2d at 129 (citations omitted).

In *Sawyer v. Humphries*, 322 Md. 247, 587 A.2d 467 (1991), the plaintiffs filed suit against Humphries, a State police officer, and

specifically alleged, *inter alia*, that Mr. Humphries, unprovoked and without cause, while in civilian clothes and without identifying himself, "prepared to throw a rock," did throw a rock, and that "the rock did strike the side of plaintiffs' automobile." They further alleged that the defendant "grabbed [Mr. Sawyer] and wrestled him to the ground, grabbed [him] by the hair and began hitting him in the face," and said that "he was going to kill Sawyer." The complaint went on to state that the defendant threatened Mr. Hundley with physical harm, and that he further battered Mr. Sawyer while Mr. Sawyer was in his own automobile.

*Id.* at 261, 587 A.2d at 474 (alterations in original). The plaintiffs did not name the State of Maryland as a defendant, and no notice was provided to the State Treasurer or a designee of the State Treasurer. Humphries moved to dismiss the complaint, arguing that because he was acting within the scope of his employment and without malice, the MTCA applied. He also contended that because the plaintiffs failed to satisfy the MTCA notice prerequisites, the action could not be maintained against the State. *Id.* at 252–53, 587 A.2d at 469. The circuit court dismissed the complaint without explanation. *Id.*

On appeal, we reversed the circuit court. We iterated that "in order for a State employee to be granted immunity from suit by [the MTCA], he must act 'within the scope of [his] public duties' and 'without malice or gross negligence,'" and defined the issue as "whether the plaintiffs' complaint alleged facts sufficient to show conduct by Mr. Humphries which either was outside the scope of his 'public duties' or was malicious." *Id.* at 253, 587 A.2d at 470. In permitting the

case to go forward, we pointed out that the "complaint was more than adequate to allege that Humphries acted maliciously":

> These facts set forth by the plaintiffs directly showed malice. When someone, without provocation or cause, throws rocks at two other persons, he is obviously demonstrating ill will towards those persons. Wrestling another to the ground, pulling his hair, and hitting him on the face, again without cause or provocation, is certainly malicious conduct.

*Id.* at 261, 587 A.2d at 474.

*Sawyer* is particularly relevant to the instant case because we found that the complaint recitations that a State police officer, unprovoked and without cause, threw a rock at the plaintiffs were sufficient to allege malice, while in the present case, Pope alleges that Barbre shot him in the neck when Pope's hands were raised in surrender. More specifically, Pope alleges that on March 17, 2004, at approximately 12:30 p.m., Queen Anne's County Deputy Sheriff Mark Barbre attempted to stop a truck driven by Andrew Pope, III. When Pope did not stop, Barbre followed him to Pope's home, whereupon Pope got out of his vehicle and raised his hands in surrender. At that point, Barbre approached Pope with his gun drawn and shot Pope in the neck. Pope was not intoxicated, incapacitated, a threat to the safety of himself or others, or disorderly. Barbre did not have a warrant to arrest Pope or an excuse to use excessive or deadly force against Pope, and the shooting was in violation of the procedures and protocol of the Queen Anne's County Sheriff's Department. Viewing these facts in the light most favorable to Pope, we hold that he has presented sufficient facts to demonstrate malice on the part of Barbre so that Barbre was not entitled to summary judgment. Although malice is "something beyond" gross negligence, *Shoemaker,* 353 Md. at 164, 725 A.2d at 560, the facts as alleged in this case could demonstrate malice so that Barbre is not entitled to invoke the immunity and non-liability provisions of the MTCA at this stage of the proceedings.

## Gross Negligence

■ Even though we hold that Pope's complaints contain sufficient allegations of malice on the part of Barbre so that Pope's claims against Barbre fall outside of the MTCA and Barbre was not entitled to summary judgment, we address, as an alternative ground, whether Pope presented sufficient allegations of gross negligence. Issues involving gross negligence are often more troublesome than those involving malice because a fine line exists between allegations of negligence and gross negligence. *See State, Use of Abell v. Western Maryland R.R.*, 63 Md. 433, 443 (1885) (noting the difficulty of distinguishing between negligence and gross negligence, "if it be capable of definition"). Negligence, as we have defined the term, is

> "any conduct, except conduct recklessly disregardful of an interest of others, which falls below the standard established by law for protection of others against unreasonable risk of harm."

*Mayor & City Council of Baltimore v. Hart*, 395 Md. 394, 410, 910 A.2d 463, 472 (2006); *Holler v. Lowery*, 175 Md. 149, 157, 200 A. 353, 357 (1938), quoting Restatement (First) Torts § 282. We have viewed gross negligence, rather, "as something *more* than simple negligence, and likely more akin to reckless conduct," *Taylor v. Harford County Dep't of Soc. Servs.*, 384 Md. 213, 229, 862 A.2d 1026, 1035 (2004) (emphasis in original); gross negligence is

> an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Liscombe v. Potomac Edison Co.*, 303 Md. 619, 635, 495 A.2d 838, 846 (1985); *Romanesk v. Rose*, 248 Md. 420, 423, 237 A.2d 12, 14 (1968). *See also Shoemaker*, 353 Md. at 164, 725 A.2d

at 560 (noting in dicta that gross negligence embodies "reckless or wanton conduct").

In the only case involving whether a complaint sufficiently alleged gross negligence to obviate the protections of the MTCA, *Boyer v. State*, 323 Md. 558, 594 A.2d 121 (1991), we opined that conclusory allegations of gross negligence were not enough to bring the claim outside of the immunity and non-liability provisions of the MTCA. In *Boyer*, the plaintiffs alleged that Trooper Titus was grossly negligent

"in pursuing Farrar, a suspected drunk driver, at an excessively high rate of speed through a heavy traffic area; in continuing to recklessly pursue defendant Farrar at extremely high and dangerous rates of speed; in failing to activate immediately all of the emergency equipment on his police car so as to warn other motorists of the foreseeable dangers to their health and safety created by defendant Titus's negligent and reckless pursuit; and in otherwise failing to adhere to the acceptable police procedures and policies in attempting to apprehend defendant Farrar."

*Id.* at 579–80; 594 A.2d at 132. We iterated that, "[i]n order to charge Trooper Titus with gross negligence, the plaintiffs must have pled facts showing that Trooper Titus acted with a wanton and reckless disregard for others in pursuing Mr. Farrar." *Id.* We concluded that the plaintiffs' allegations, even considered in the light most favorable to the plaintiffs, were "somewhat vague" and did not "support the conclusion that [ Trooper Titus] acted with gross negligence." *Id.* at 579–80, 594 A.2d at 132–33.

In a case similar to the instant case, *Ingram v. Kerr*, 120 N.C.App. 493, 462 S.E.2d 698 (1995), the North Carolina intermediate appellate court addressed whether a survivor of a bystander, Ivan Ingram, who was shot during a drug raid, adequately alleged sufficient facts to support a claim of gross negligence in a wrongful death suit against a police officer. In the complaint, the plaintiff alleged that when Ingram arrived at the house, unarmed, police ordered him to display his hands; when Ingram complied and raised his hands, the

officer fired a single shot, killing Ingram. The trial court granted the officer's motion to dismiss for failure to state a claim upon which relief can be granted. The appellate court reversed the dismissal as to the officer's individual claim, noting that "[a]t this stage of the pleadings, on a motion to dismiss wherein we are to liberally construe all allegations of plaintiff's complaint as true, we find plaintiff's argument more persuasive":

> The allegations of plaintiff below do not lead to only one conclusion, as defendant contends, that defendant merely made an error in judgment in shooting Ivan Ingram. Rather, taken in the light most favorable to plaintiff, the plaintiff's allegations contend defendant shot Ingram without ascertaining whether he was armed or a threat. Defendant's argument that an officer will now be subject to suit for every mistake in judgment is unfounded. We create no new cause of action in that regard. If discovery leads to uncontroverted evidence that Officer Kerr's actions were a mere mistake or a negligent mistake in the exercise of his judgment, then defendant Kerr will be entitled to judgment at that point. *At this stage of the pleadings, however, where plaintiff has alleged that Officer Kerr's actions were intentional and reckless before ascertaining whether Ivan Ingram was armed, and outside the scope of his duties, we cannot say that plaintiff has not stated a cause of action.*

*Id.* at 701 (emphasis added). *See also Farrey v. Bettendorf,* 96 So.2d 889, 894–96 (Fla.1957) (stating that allegation that operator of motor scooter was driving at an excessive speed at night on an unlighted street and continuously turned his head around to talk to his passenger such that he could not see where he was going was sufficient to allege gross negligence, rather than negligence, reversing a dismissal of the complaint); *Kendricks v. Rehfield,* 270 Mich.App. 679, 716 N.W.2d 623, 625 (2006) (concluding that fact that police officers failed to investigate plaintiff's claim of mistaken identity for seven months while the plaintiff was held in jail pending trial was not a negligent mistake but "an egregious injury" with sufficient indicia of gross negligence to preclude the court from

granting summary judgment for the officers); *Koffman v. Garnett*, 265 Va. 12, 574 S.E.2d 258, 260 (2003) (concluding that allegation that a middle school football coach, weighing approximately 260 pounds, to demonstrate proper tackling technique, "thrust his arms around" a player's body, weighing approximately 144 pounds, lifted him "off his feet by two feet or more," and slammed him to the ground, was sufficient to constitute gross negligence, instead of negligence, reversing a dismissal of the complaint).

In the case *sub judice*, viewing the facts in the light most favorable to Pope, we hold that Pope has presented sufficient facts to demonstrate gross negligence on the part of Barbre so that Barbre was not entitled to summary judgment. The fact that Barbre ordered Pope, who was unarmed, to raise his hands, and that after Pope complied with the request, Barbre approached with his gun drawn and shot him in the neck, could support an inference that Barbre acted grossly negligent.

Although it was error to grant summary judgment for Barbre, the evidence at trial may show that Barbre was acting without malice or gross negligence. If it does, Barbre would be entitled to the immunity granted by the MTCA. On the other hand, the evidence may show that Barbre was acting either maliciously, or grossly negligent, so that he would not be entitled to immunity under the MTCA.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND MODIFIED IN PART AS INDICATED IN THIS OPINION. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTION TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY AS TO THE STATE OF MARYLAND AND QUEEN ANNE'S COUNTY, AND REVERSE THE JUDGMENT AS TO DEPUTY SHERIFF BARBRE AND REMAND FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT TO BE PAID BY BARBRE.**

# COSTS IN THE COURT OF SPECIAL APPEALS TO BE DIVIDED EQUALLY BY THE PARTIES.