**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 13-2491**

_____

JEREMY MARKS,

                    Plaintiff - Appellant,

          v.

THOMAS DANN,

                    Defendant – Appellee,

          and

NATHAN CUMMINGS; CARLO DINALLO; STANISLAV LICUL; MAXTENA,
INC.,

                    Defendants.

_____

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Deborah K. Chasanow, Senior District
Judge.  (8:13-cv-00347-DKC)

_____

Argued:  December 9, 2014          Decided:  January 21, 2015

_____

Before KEENAN, FLOYD, and HARRIS, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Harris wrote the
opinion, in which Judge Keenan and Judge Floyd joined.

_____

**ARGUED**:   John  Da  Grosa  Smith,  SMITH  HORVATH  LLC,  Atlanta,
Georgia,  for  Appellant.   Julia  Doyle  Bernhardt,  OFFICE  OF  THE
ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee.
**ON  BRIEF**:   Matthew  A.  Horvath,  SMITH  HORVATH  LLC,  Atlanta,

Georgia, for Appellant.  Douglas F. Gansler, Attorney General of
Maryland, Robert N. Stokes, Assistant Attorney General, OFFICE
OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Maxtena, Inc. ("Maxtena") is a promising Maryland-based manufacturer of custom antenna solutions. Since 2011, Maxtena's co-founders have been engaged in serial litigation over the ownership stake held by Jeremy Marks ("Marks"), a co-founder and former officer and employee of the company. In the complaint that underlies this case, Plaintiff-Appellant Marks alleges that his former colleagues entered into a sweetheart deal with the Maryland Venture Fund ("MVF"), a Maryland state agency responsible for investing in early-stage technology companies, to dilute his stake in the company at an artificially low valuation. In addition to Maxtena's board members, Marks names as a defendant Thomas Dann ("Dann"), the MVF's managing director. Marks alleges that Dann colluded with Maxtena's board members, breaching his own fiduciary duties to Maxtena and aiding and abetting the others.

The district court dismissed Marks's claims against Dann, holding that Dann was entitled to immunity from personal liability under the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., Cts. & Jud. Proc. § 5-522 (West 2000). The MTCA couples a waiver of the state's sovereign immunity from civil suits in state court with protection for state officials who act without malice and within the scope of their official duties. The district court found that Marks's complaint failed to plausibly

3

allege that Dann's actions came within either the "malice" or the "scope-of-duty" exception to the MTCA and dismissed the complaint as against Dann under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For the reasons that follow, we affirm.  Under the MTCA, Marks's remedy for the MVF's alleged misconduct was against the state, not against Dann in his personal capacity.

**I.**

**A.**

Marks left his position at Maxtena in July, 2010.  About one year after what Marks alleges was his "ouster," in April, 2011, Maxtena filed suit against Marks in the district court, alleging that Marks had surreptitiously founded a competing venture while still employed at Maxtena.  Maxtena v. Marks, Civ. A. No. 8:11-cv-9450-DKC (D. Md. Apr. 13, 2011).  In the Maxtena litigation, Maxtena seeks to enforce contractual provisions that it claims entitle it to repurchase Marks's 34% stake in the company for a nominal sum.  Maxtena and Marks agreed that they would mediate the Maxtena litigation, after first engaging in financial and valuation discovery intended to facilitate settlement discussions.  It was through that discovery that Marks became aware of negotiations between Maxtena and the MVF

4

regarding a potential early-stage investment by the MVF in Maxtena (the "MVF Transaction").

Dann did not initiate those negotiations, which began under the MVF's former director, Frank Dickson, before Dann joined the MVF. But shortly after he became the MVF's managing director in July 2012, Dann delivered a term sheet to Maxtena proposing a short-term bridge investment. According to the complaint, Dann designed that proposal to "exploit" the Maxtena board's interest in setting a low valuation for the company in advance of its settlement discussions with Marks, in order to secure for the MVF "ownership in a promising and rapidly growing technology company at an exceptionally low price."

Specifically, the MVF proposed to purchase a one-year note, convertible into equity, from Maxtena. If the MVF were to exercise its option to convert, it would be able to secure a 50% interest in Maxtena for just $500,000. The MVF's offer also included a new employee stock options pool, which would give Maxtena's board members the option to reverse the dilutive effect of the MVF Transaction, and regain their controlling stake in the company, by buying back in at a higher valuation. Marks alleges that this stock-options grant was intended to shift the cost of the dilution caused by the MVF Transaction onto Marks, the only significant shareholder who wasn't also a Maxtena employee.

5

The MVF's offer as proposed by Dann was not accepted; Maxtena thought the terms were "very expensive" and designed to take advantage of the company's situation. Instead, Maxtena CEO Stanislav Licul ("Licul") proposed various changes to the MVF's term sheet, all of which Marks contends were designed to benefit Licul and the other Maxtena board members personally, but not Maxtena itself. For example, Marks points out that Licul asked for a more favorable options pool, but did not seek a higher valuation for the company. Dann rejected many of these changes. He was willing to invest directly in Maxtena's equity in lieu of the convertible note, but would not agree to a cap on the MVF's return or accept a less favorable place in the Maxtena capital structure. He also rejected Licul's changes to the employee stock options pool, which he described as already "exceptional."

After further negotiations, Dann and Licul signed a binding "commitment letter" on September 20, 2012. The final terms of the MVF Transaction retained the allegedly favorable valuation Dann proposed initially, which Marks contends was designed to manipulate the Maxtena litigation, but also included a slightly larger employee stock options pool. The Maxtena board approved the MVF Transaction on October 3, 2012. Dann became the MVF's representative on the board that same day, and the transaction was publicly announced on November 13, 2012.

6

Marks filed his complaint on February 1, 2013, alleging that the MVF Transaction was an elaborate "scheme" intended to dilute his stake in the company and provide Maxtena with an artificially low valuation to anchor the ongoing settlement discussions in the Maxtena litigation. Count I of the complaint alleges that Licul and the other members of the Maxtena board negotiated for themselves, rather than Maxtena, in breach of their fiduciary duties. Those claims against Licul and the other board members remain pending in the district court.

Counts II and III of the complaint allege the causes of action against Dann that are the subject of this appeal. In Count II, Marks contends that after becoming a member of the Maxtena board, Dann breached his fiduciary duties by approving the expanded stock options pool, and in Count III, he asserts that Dann aided and abetted Licul and the other Maxtena board members' breach of their fiduciary duties when he "sold" them a transaction intended to provide the MVF with a stake in Maxtena for an "exceptionally low price," at both Marks's and Maxtena's expense.

Maxtena and the other defendants filed answers on February 22, 2013, in which they denied the substance of Marks's allegations. Dann separately filed a motion to dismiss the claims against him under Rule 12(b)(6). In support, Dann argued

7

that the claims against him in his individual capacity were statutorily barred by the MTCA because the complaint did not plausibly allege that his actions were malicious or outside the scope of his public duties as the managing director of the MVF.[1]

The district court granted Dann's motion to dismiss on July 24, 2013. Marks v. Dann, Civ. A. No. 8:13-cv-00347-DKC (D. Md. July 24, 2013), ECF No. 30. In a detailed memorandum opinion, the district court held that Marks's claims against Dann were barred by the MTCA because the complaint did not plausibly allege that Dann's actions fell within either of the statutory exceptions upon which Marks relied. Marks v. Dann, Civ. A. No. 8:13-cv-00347-DKC, 2013 WL 8292331 (D. Md. July 24, 2013). Canvassing extensive Maryland case law defining "malice" for purposes of the MTCA, the district court found that even crediting Marks's allegation that Dann took advantage of the Maxtena board's conflict to gain a "substantial ownership interest in Maxtena for the MVF at an exceptionally low price," Marks had not provided any facts in support of his theory that Dann did so because of an improper motive, rather than in order to advance the MVF's legitimate commercial interests. The

_____

[1] In the alternative, Dann argued that Marks's claims were properly characterized as requests for relief against the state and therefore barred in federal court by the state's Eleventh Amendment immunity. The district court rejected that argument and Dann has not appealed.

8

district court also rejected Marks's alternative theory that Dann's actions were beyond the scope of his role at the MVF, an argument the court found completely lacking in factual support and contradicted by the complaint's allegations that Dann acted to secure a stake in Maxtena for the MVF at a below-market price.

Marks did not seek reconsideration of the district court's decision or leave to amend. Instead, he moved for certification of the district court's dismissal as a final and appealable order under Rule 54(b) of the Federal Rules of Civil Procedure. The district court granted the motion, and Marks timely noted this appeal.

## II.

### A.

We review de novo the district court's partial dismissal of Marks's action under Rule 12(b)(6). Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 364 (4th Cir. 2012). Like the district court, we must credit the well-pleaded allegations in Marks's complaint as true, and construe "the facts in the light most favorable" to Marks. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). To survive a motion to dismiss, however, Marks's complaint must do more than "plead facts that are 'merely consistent with' a

9

defendant's liability." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Rather, the pleaded facts must "state a claim to relief that is plausible on its face" and "allow[] the court to draw the reasonable inference," id., that Dann is personally liable under the MTCA for the misconduct alleged.

**B.**

The parties agree that the MTCA governs the immunity issue in this diversity action. That statute provides, in relevant part, that a state official like Dann is immune from liability for any "tortious act or omission that is within the scope of the public duties of the [official] and is made without malice or gross negligence, and for which the State [has] waived immunity." Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (West 2000). And in a precisely complementary provision, the MTCA waives the state's immunity for tort actions brought in state court except where a tortious act or omission by state personnel is outside the scope of their public duties or made with malice or gross negligence. Id. at § 5-522(a); see also Md. Code Ann., State Gov't § 12-104(a), (b) (West 1999). The combined effect is that in the ordinary case, the MTCA "substitutes the liability of the State for the liability of the state employee." Lee v. Cline, 863 A.2d 297, 307 (Md. 2004); see also Newell v. Runnels, 967 A.2d 729, 763 (Md. 2009) ("If the State is liable,

10

the individual is immune; if the individual is liable, the State is immune.").

Two general features of this statutory scheme help to frame the dispute here. First, § 5-522(b) is designed to provide state officials with "broad statutory immunity" from suit, going beyond the protections of Maryland common law. Lee, 863 A.2d at 306. State common law, for instance, would permit suits against Maryland officials for intentional, as opposed to negligent, torts. But under the MTCA, state officials enjoy immunity even as to intentional torts, consistent with the statutory purpose of insulating state employees broadly from all forms of tort liability. Id.

Second, this expansive grant of immunity to state officials is justified in part by its link to a reciprocal waiver of the state's own immunity. Id. at 307. Where a state official is immune from suit under § 5-522(b), then under the MTCA's interlocking immunity and waiver provisions, "the injured party will ordinarily be able to recover against the State as long as he or she complies with the procedural requirements" of the statute. Id.[2] At issue in MTCA cases like this one, in other

---

[2] Those procedural requirements include the timely filing of suit in state rather than federal court; Maryland's waiver of immunity under § 12-104(a) is restricted to tort actions in a "court of the State." Md. Code Ann., State Gov't § 12-104(a)(1) (West 1999). Section 12-104(a)(2) limits state liability to (Continued)

11

words, is not whether a person injured by tortious state action, as Marks alleges, will have any remedy, but whether that remedy will lie against a state official in his or her personal capacity or against the state itself.

## c.

Marks argues that his remedy is against Dann, § 5-522(b) notwithstanding. Because Dann specifically designed the MVF Transaction to cause him harm, Marks contends, Dann's actions come within both the MTCA exception for malicious conduct and the exception for conduct outside the scope of employment. In response, Dann argues that there was nothing improper about his desire to achieve the best possible economic outcome for the MVF, and that there is no support in the complaint for Marks's theory that he colluded with the Maxtena board to purposefully harm Marks. Like the district court, we agree with Dann. Read in the light most favorable to Marks, the allegations in the complaint fall short of what is required to show malice or conduct outside the scope of public duties under Maryland law.

---

$200,000 for a single claimant and tortious incident, subject to provisions for exceeding that cap laid out in § 12-104(c). Id. at § 12-104(a)(2), (c).

**1.**

For purposes of the malice exception to MTCA immunity, a state official's conduct is "malicious" if it is "characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." Barbre v. Pope, 935 A.2d 699, 714 (Md. 2007) (citations and quotation marks omitted); see also Lee, 863 A.2d at 311-12 (characterizing "malice" as "affirmative intent to bring harm," "ill will," or other "improper motive"). As this formulation suggests, "intent and motive are critical" to application of the malice exception under Maryland law. Lee, 863 A.2d at 311. The malice exception thus differs significantly from the familiar federal qualified immunity standard under 42 U.S.C. § 1983, asking not whether an official's conduct was objectively unreasonable, but instead whether the official actually and subjectively intended to do wrong or harm. See Newell, 967 A.2d at 763; Shoemaker v. Smith, 725 A.2d 549, 557-59 (Md. 1999) (contrasting § 1983 and state-law malice standards). That is a high bar, as Maryland's courts have emphasized, requiring more than "merely reckless or wanton conduct," Shoemaker, 725 A.2d at 560-61,[3] and satisfied on a

---

[3] As the Maryland Court of Appeals has explained, "reckless or wanton conduct" is covered by a different statutory exception to the MTCA state-official immunity for "gross negligence." Shoemaker, 725 A.2d at 561. At no point during this litigation has Marks relied on the gross-negligence exception, and we thus
(Continued)

13

showing that an official acted with an "evil motive" to "deliberately and willfully injure" a plaintiff, <u>Thacker v. City of Hyattsville</u>, 762 A.2d 172, 189 (Md. Ct. Spec. App. 2000).

As the district court explained, this wrongful motive, which is "seldom admitted," need not be proven by direct evidence under Maryland law, and is more commonly "inferred from acts and circumstantial evidence." But as the district court also recognized, Maryland case law makes clear that inferring § 5-522(b) malice from circumstantial evidence can be especially difficult in the commercial context, where behavior that might be consistent with an intent to harm or some other improper motive is often at least equally consistent with permissible financial self-interest. <u>See</u> <u>Postelle v. McWhite</u>, 694 A.2d 529, 534 (Md. Ct. Spec. App. 1997) (inferring malice in a commercial setting "particularly difficult because of the inherently competitive and aggressive nature of the business environment and the necessity to discern that conduct is motivated by malice rather than the result of a legitimate commercial controversy"); <u>cf.</u> <u>Cozzarelli v. Inspire Pharm. Inc.</u>, 549 F.3d 618, 626–28 (4th Cir. 2008) (in securities fraud case where legitimate business

do not consider whether Marks's complaint could be construed to allege the requisite "utter[] indifferen[ce]" to the rights of others, <u>Newell</u>, 967 A.2d at 764 (quotation marks and citations omitted), under that exception.

14

motivations could explain facts alleged in complaint, plaintiffs have "difficult task" of establishing intent through circumstantial allegations).  That is not to say that malice can never be inferred circumstantially in a commercial setting.  But there must be more to support the inference than the allegation that a plaintiff has suffered economic injury as a result of actions by a state official that advance the economic interests of his or her state employer, because allegations as consistent with the regular course of commercial dealings as they are with malicious intent do not, on their own, "nudge[] [a claim] across the line from conceivable to plausible."  Twombly, 550 U.S. at 570; see also Postelle, 694 A.2d 534–36; New Summit Assocs. L.P. v. Nistle, 533 A.2d 1350, 1357 (Md. Ct. Spec. App. 1987).

This is where Marks's complaint falls critically short. Marks's theory appears to be that Dann proposed and structured the MVF Transaction not for the purpose of benefitting his employer economically, but instead for the purpose of causing harm to Marks.[4]  But as support, Marks's complaint offers only

---

[4] As noted earlier, "malice" under § 5-522(b) is not limited to an affirmative intent to harm, but also may take other forms, such as "knowing and deliberate wrongdoing" or "fraud."  See Barbre, 935 A.2d at 714.  Marks rests, however, on specific intent to injure, and does not argue, for instance, that his complaint can be read to allege that Dann intended to defraud Marks, or that Dann engaged in knowing and deliberate wrongdoing by assisting Maxtena in wrongfully taking shares that he knew belonged to Marks.  In this case, that is a wise concession: (Continued)

15

the allegation that he did indeed suffer economic injury as a result of Dann's commercial activities. There is nothing in the complaint from which we could infer, even circumstantially, that Dann's conduct was driven by something other than ordinary economic concerns – an effort, perhaps overzealous, to get a good deal for the MVF.

First, most of the complaint's allegations regarding intent are directed not at Dann but at the Maxtena board, describing the board's desire to harm Marks. The few allegations bearing directly on Dann's intent identify only commercial motivations, not a malicious intent to injure. Marks alleges, for instance, that "Dann was able to secure a substantial ownership interest in Maxtena for the MVF at an exceptionally low price," and that to do so he "played on the conflict of interest of [the Maxtena board] to the detriment of Maxtena and Marks." But under Maryland law, there is nothing malicious about Dann's allegedly sharp-elbowed attempt to secure a better deal for his employer.

---

Marks's complaint does not allege fraud at all, and the transaction documentation provided by Marks expressly assumes that Marks had no legal entitlement to any shares in the company. But with proper support and stated with the requisite particularity under Rule 9 of the Federal Rules of Civil Procedure, plausible allegations of such fraud or deliberate wrongdoing could meet the malice standard under Maryland law. See Manders v. Brown, 643 A.2d 931, 943 (Md. Ct. Spec. App. 1994) ("corrupt or fraudulent motive" constitutes malice).

16

"A mere desire to realize commercial gain at the expense of another does not, without more, reach the requisite mental state for actual malice."  New Summit Assocs., 533 A.2d at 1357.

To support these insufficient allegations Marks provides just one piece of direct evidence purported to show the requisite malice: a series of emails in which Dann suggested that structuring the transaction as an equity investment might "facilitate resolution of the rogue shareholder issue."  Like the district court, we do not think that an awareness of the Maxtena litigation or interest in its settlement demonstrates that Dann was motivated by anything other than a desire to protect the MVF's investment in Maxtena.  Nor do we believe that Dann's characterization of Marks as a "rogue shareholder," read in context, is anything more than a factual description of Marks's status in the ongoing Maxtena litigation.  Even giving Marks the benefit of the doubt, as we must, this stray reference alone is not enough to create a plausible inference of personal animus.

Second, and equally important, the complaint lacks any circumstantial evidence of malice.  In the commercial context, economically pointless or gratuitous conduct by a state official may give rise to an inference of malice under the MTCA, because it suggests that the official was motivated by something other than the state's financial interests.  See Postelle, 694 A.2d at

17

534–36. But here, there is no allegation or indication that Dann sought or agreed to terms unrelated to the economics of the MVF Transaction. Nor has Marks alleged, for instance, that Dann agreed to terms that are out of the ordinary for transactions of this type; or that his stance in the negotiations, as detailed above, was inconsistent with the MVF's commercial interests; or that Dann conceded more than was necessary to complete the transaction. Whatever may be said about whether the Maxtena board drove an appropriately hard bargain or improperly focused on the employee stock options pool during negotiations, Dann can hardly be faulted for failing to insist that the MVF pay a higher price for its interest in Maxtena than Maxtena required. In short, there is nothing in Marks's complaint that would allow us to "discern" from the circumstances "conduct [] motivated by malice rather than the result of a legitimate commercial controversy." Id. at 534.

## 2.

For similar reasons, we reject Marks's alternative argument that Dann's actions fall within § 5-522(b)'s exception for conduct "outside the scope" of an official's public duties. Under the MTCA, conduct is outside the scope of public duties if it is undertaken for reasons of personal ambition or unauthorized by the state employer. See Sawyer v. Humphries, 587 A.2d 467, 470–71 (Md. 1991) (scope-of-authority exception

18

coterminous with common law of respondeat superior). As to personal ambition, as discussed above, the complaint offers no facts from which we could infer that Dann was acting in his own self-interest rather than in an effort to advance the economic interests of his state employer, the MVF. Indeed, the complaint itself insists that Dann secured an extremely advantageous bargain for the MVF; by all accounts, Dann did quite well by his employer. And without belaboring the point, we note that the transaction documentation provided by Marks, deemed integral to his complaint, establishes that Dann served on the Maxtena board as the MVF's representative and not for his personal benefit.

Marks's chief contention seems to be that intentional torts such as breach of fiduciary duty by definition cannot be "authorized" by a state employer. In this regard, he is simply mistaken. It is clear that the MTCA, unlike Maryland common law, extends state-official immunity to intentional as well as negligent torts. See Lee, 863 A.2d at 310 ("[W]e hold that the immunity under the [MTCA], if otherwise applicable, encompasses constitutional torts and intentional torts."). We cannot adopt a reading of the scope-of-immunity exception that would effectively swallow that rule.

As we have explained, the most that can be inferred from Marks's complaint is that Dann was overzealous in his attempts to secure a good deal for his employer, not that he advanced an

19

agenda to harm Marks or to derive some personal benefit. We do not decide whether Dann's actions in this regard were tortious, even intentionally so, because the malice and scope-of-employment exceptions to the MTCA require significantly more before a state official may be held personally liable. See Lee, 863 A.2d at 309-10. We hold only that this is the ordinary, not the exceptional, case under the MTCA, in which broad state-official immunity protects Dann from suit in his personal capacity.

## III.

Marks contends that certain additional allegations and documents, not presented with his original complaint, would allow him to show Dann's personal animus toward him, and thus to meet the "malice" standard under the MTCA. Marks did not seek leave in the district court to amend his complaint to include these materials. Instead, without explanation, he provided those new facts and allegations – along with transcripts of Dann's deposition in the Maxtena litigation, all of which were available to him when he first filed his complaint – with his brief in opposition to Dann's motion to dismiss. The district

20

court properly deemed these matters outside the complaint and refused to consider them as part of its Rule 12(b)(6) analysis.[5]

Though under no obligation to do so, the district court went on to review the additional allegations and deposition excerpts.  The court concluded that even the new materials did not give rise to a plausible inference of malice, and thus that there was no basis to invite Marks to amend his complaint.  Cf. Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 602–03 (4th Cir. 2010) (a district court may deny leave to amend if amendment would be futile).

Although he never moved for leave to amend in the district court, Marks now argues that the district court erred by refusing to invite an amendment.  But a district court does not abuse its discretion by declining to grant a motion that was never made.  See Drager v. PLIVA USA, Inc., 741 F.3d 470, 474–75 (4th Cir. 2014); see also Cozzarelli, 549 F.3d at 630–31 (district court did not abuse discretion by denying motion for leave to amend that was never properly made).  The district court's conscientious review of Marks's proffered materials, even in the absence of a motion to amend, does not provide a

---

[5] To the extent Marks argues otherwise, suggesting that the district court improperly converted Dann's motion to dismiss into one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, he is mistaken.  The district court could not have been clearer in this respect.

21

justification for appellate second-guessing.  Accordingly, we do not consider the merits of the district court's futility determination, holding only that the court did not abuse its discretion by failing to provide for amendment in the absence of a motion to amend and in dismissing Marks's claims against Dann with prejudice.

## IV.

For the reasons stated above we affirm the district court's dismissal of Counts II and III of the complaint.

<u>AFFIRMED</u>

22